John C. Sheppard and others, Plaintiffs in error, *v.* John Wilson.

The statutes of Iowa provide a mode for taking bills of exceptions, by directing that they shall be tendered to the judge for his signature during the progress of the trial, although judges may, and often do, sign bills of exception, *nunc pro tunc,* after the trial.

Such is also the English practice under the Statute of Westminster 2, and such is the practice recognized by this court.

Therefore, where a bill of exceptions was signed two years after the trial, the Supreme Court of Iowa were right in striking it out of the record.

Where, after verdict, a motion was made for a new trial, which was held under a continuance, and an entry was afterwards made that the motion was overruled, and judgment entered on the verdict, but, at the time of such entry and judgment, the court was not legally in session, it was no error in the court, at a subsequent and regular term, to treat the entry thus irregularly made as a nullity, to decide the motion, and enter up judgment according to the verdict.

The difference between this case and that of the Bank of the United States *v.* Moss (6 Howard, 31) pointed out.

A continuance, relating back, may be entered at any time, to effect the purposes of justice.

This cause was brought up by writ of error from the Supreme Court of the Territory of Iowa.

It was an action commenced in the District Court of Scott county, in the Territory of Iowa, by Wilson against Sheppard and others, for a breach of a contract for hiring a steamboat. It is not necessary to state the facts in the case, or any other circumstances than those upon which the decision of this court turned.

On the 7th of October, 1841, the cause came on for trial in the District Court of Scott county, when the jury found a verdict for the plaintiff, and assessed his damages at $ 1,837.50.

A bill of exceptions, containing a recapitulation of the evi-

Sheppard et al. *v.* Wilson.

dence upon both sides and sundry prayers to the court, is found in its proper place in the record; but the date of its signature by the judge is the 21st day of December, 1843, whereas the trial took place in October, 1841.

A motion for a new trial was made by the counsel for the defendants upon several grounds, which it is not necessary to specify.

In April, 1842, the court commenced in Scott county on the 4th, and in Clinton county, in the same district, on the 11th. But on the 12th of April, whilst the court was in session in Clinton county, the following entries were made in Scott county:—

JOHN WILSON *v.* JOHN C. SHEPPARD et al. — *Assumpsit.*

And now come the parties by their attorneys, and the defendants move for judgment on the motion for a new trial, made and argued at the last term of this court in this cause, and held under advisement until the present term.

### *Judgment.*

It is considered by the court, that said defendants take nothing by their said motion; and thereupon the plaintiff moves the court for judgment upon the verdict rendered by the jurors aforesaid at the last term of this court in this cause. It is therefore considered by the court, that the plaintiff recover of the defendants the said sum of eighteen hundred and thirty-seven dollars and fifty cents, his damages aforesaid in form aforesaid assessed, besides his costs by him about his suit in this behalf expended, and that execuion issue therefor.

### *Appeal granted.*

And thereupon, the said defendants, by their attorney, pray an appeal, which was allowed.

Whether or not this appeal prevented the District Court of Scott county from correcting the erroneous entry was one of the questions before this court.

At October term, 1842, the following proceedings took place in the District Court of Scott county:—

### *Plaintiff's Motion for Judgment.*

And afterwards, to wit, on the third day of October, in the year of our Lord 1842, the said plaintiff filed in the court aforesaid the following motion for judgment in this cause, to wit:—

WILSON *v.* SHEPPARD AND OTHERS.

And now, at this day, October term, 1842, comes the said plaintiff, by Mitchell & Grant, his attorneys, and moves the

court to enter up judgment in this cause, as of the last fall term of this court. MITCHELL & GRANT, *for Plaintiff*.

### Second Judgment.

And afterwards, to wit, on the 7th day of October, in the year last aforesaid, the following proceedings were had, to wit: —

WILSON *v.* SHEPPARD AND OTHERS. — *Assumpsit.*

This day came the said plaintiff, by his attorney, and it appearing to the court, that, at a previous term of this court, to wit, the October term, 1841, the issue previously joined in this cause was submitted to a jury, who, after hearing the evidence and arguments of counsel, returned into court the following verdict, to wit: they find the issue for the plaintiff, and assess his damages at the sum of eighteen hundred and thirty-seven dollars and fifty cents.

### Appeal prayed by Defendants.

Whereupon, a motion was made by the attorney for defendants for a new trial herein, which motion was, at said October term, taken under advisement by the court; and it further appearing to the court, that this court has not at any time since decided said motion, but that said motion was continued under advisement until the present term, that the order of continuance at last term was not entered of record. It is therefore ruled, that said order of continuance be entered "*nunc pro tunc*"; and the court, having now fully considered the said motion for a new trial, doth overrule the same. And it is further considered by the court, that the plaintiff have and recover of and from the said defendants the said sum of eighteen hundred and thirty-seven dollars and fifty cents, his damages in manner and form aforesaid assessed, together with his costs by him about his suit in that behalf expended, and that a special execution against the property attached issue therefor; thereupon the defendants prayed an appeal to the Supreme Court.

To this judgment of the District Court, the counsel for the defendants took a bill of exceptions, with a view to carry the case up to the Supreme Court of Iowa.

In January, 1844, the case came before the Supreme Court of Iowa, when the counsel for Wilson moved to strike from the record, and reject from the consideration of the court, the bill of exceptions filed and dated in December, 1843; which motion the court sustained.

The counsel for Sheppard then moved for a mandamus, directed to the judge of the District Court of Scott county, re-

quiring him to sign and seal, *nunc pro tunc*, the bill of exceptions tendered on the original trial. But the court refused to grant the mandamus.

After some other proceedings, which it is not necessary to state, the Supreme Court of Iowa, in January, 1845, affirmed the judgment of the District Court of Scott county.

To review this affirmance, a writ of error brought the case up to this court.

It was argued by *Mr. Clement Cox* and *Mr. Learned* (in print), for the plaintiffs in error, and by *Mr. Grant*, for the defendant.

The counsel for the plaintiffs in error assigned twelve causes of error, the last six of which are as follows : —

7th. The court erred, in entering an order for a continuance of this cause, *nunc pro tunc*, on motion therefor, at the October term, 1842, and in rendering a judgment upon the verdict of the jury at said term, upon a mere motion of the plaintiff.

8th. The court erred, in rendering a judgment at the October term, 1842, the second judgment in this record, after a writ of error had been sued out and served, and made a supersedeas by the allowance of a judge of the Supreme Court, which was then pending.

9th. The Supreme Court erred, in expunging from the record the defendant's bill of exceptions, tendered at the trial of the cause before the District Court of Scott county.

10th. The Supreme Court erred, in refusing the writ of mandamus, on the motion of the plaintiff in error, to the judge of the District Court of Scott county, requiring the said judge to sign and seal, *nunc pro tunc*, the bills of exceptions tendered at the trial of this cause before the District Court, by the defendants below, or show cause against the said motion.

11th. The said Supreme Court erred, in reversing the judgment of the District Court, rendered upon the verdict of the jury on the 12th of April, 1842, on the ground that the supersedeas bond did not appear in the record with the writ of error.

12th. The Supreme Court erred, in affirming the judgment of the District Court, rendered on the 7th of October, 1842, being the second judgment rendered in said cause, and which said judgment was rendered when a writ of error was pending, and after the cause had been removed thereby from the jurisdiction of said District Court.

The argument on behalf of the plaintiffs in error, upon the above points, was as follows.

We will now examine the 7th and 8th errors assigned, as

they are connected in substance, and inquire what this first judgment of April was in its character.

Suppose the plaintiffs in error had acquiesced in this judgment, and had not taken any steps to have it reversed, could not the plaintiff below have enforced his judgment? Was it not a final judgment in the cause, conclusive on its face, upon the parties to it, upon the subject-matter embraced in the suit? Suppose the plaintiff below had issued his execution, levied it upon property, and sold the same in satisfaction of the judgment, while the judgment remained unreversed, and without any supersedeas to restrain its operations, could an action have been maintained against the officer for levying upon, taking, and selling the defendants' property in satisfaction of the judgment debt? We say it could not; and the defendant in error thought so, too, for he did issue his execution upon this judgment, which appears by the records, and the officer made his full return thereof before the writ of error to reverse the judgment was sued out. In 6 Peters, 8, the Supreme Court decide,—"If execution issue upon an erroneous judgment, the party who acts under it is justified until it is reversed, for it is the act of the court." So in 9 Peters, 8, the court say,—"A judgment of a court of competent jurisdiction," (which means, I suppose, a court having a legal jurisdiction of the subject-matter of the suit,) "while unreversed, concludes the subject-matter of it between the parties to it." In 3 Cranch, 300, the court decide, that "a judgment of a court of competent jurisdiction, although obtained by fraud, has never been considered void, and all acts done under such judgments are valid as respects third persons." Such judgments, then, by these authorities, would protect the sheriff acting under the authority of an execution to enforce them. Such is the case of the first judgment rendered in this cause, as the record will show. Again, in 3 Dallas, 401, the court say, that "although a judgment of an inferior court be defective, yet, if in its nature it is final, and one on which an execution can issue, the party is entitled to his writ of error." This judgment of the 12th of April, 1842, was not only final by its terms, but it was one on which an execution could issue,—one on which the plaintiff below did actually issue, and have a legal return of his execution, and one on which we were entitled to a writ of error. We obtained our writ of error, and made it a supersedeas, as the record proves.

The court erred, then, in rendering a judgment at the October term, 1842, in this cause, after a writ of error had been sued out and was pending, and which was made a supersedeas to the former judgment by allowance of a judge of the Su-

preme Court. We contend that the writ of error was a super-
sedeas, and stayed all proceedings of the District Court upon
this judgment after its date; that the District Court was, from
that hour, held in abeyance in relation to the whole cause and
every matter connected with it, until the writ of error was dis-
posed of in the appellate court. For this point I refer to 1
Blackford, 483, where the court say, — "A writ of error *is* a
supersedeas, so far as to stay all proceedings until the writ of
error is disposed of." If this be law, — and the books are full
of similar decisions, — then we say that the District Court of
Scott county had no power, at the October term, 1842, nor at
any subsequent term, to render the second judgment in this
cause, which was brought there to be reversed by the second
writ of error appended to the record, even if the cause was
otherwise open for the action of the court, and a judgment
might have been legally rendered at that term. But I contend
that the District Court had no power or legal authority to alter
or amend a final judgment, at a subsequent term after it is
rendered. It can only amend as to mere form. We refer the
court to 1 Ohio Reports, 375, where this doctrine is fully
laid down; also to 2 Ohio Reports, 32, and 3 Ohio Reports,
306. In both of these last cases, the same principles are
decided. In 2 Washington's C. C. R. 433, the court de-
cide, that, "where there is error in entering a judgment, the
court, at a subsequent term, cannot set it aside, unless it was
entered by misprision of the clerk, by fraud." This is a strong
case, from high authority, and is as directly in point, it seems
to me, as language can make a case. In 3 Marshall's Ken.
Rep. 268, the court say, — "A court possesses no power, at a
subsequent term, to modify, set aside, or alter, on motion, a
judgment of a previous term. This proceeding must be by
writ of error." In the case at bar, the court not only set aside
a final judgment rendered at a preceding term, but in defiance
of a writ of error issued to reverse that judgment; and this
was done on the motion of the party who voluntarily asked to
have the erroneous judgment, as he termed it, rendered.

In 1 Greenleaf, 369, the court decide, that "the judgment
of a court of competent jurisdiction cannot be affected by
entries on the record, except upon a writ of error." How
much less, then, should an entire judgment be annulled, how-
ever erroneous it may be, and a new judgment entered at a
subsequent term, upon a mere motion, and without any rule for
the opposite party to show cause against it, as was the case at
bar. It is decided in 1 Blackford, 168, that "a grant erro-
neously made, until it is reversed, is a bar to a suit." The
reasoning, from all these authorities, seems to me to be this, —

that an act done by legal authority, appearing on its face to have been correctly done, however erroneous, can only be corrected in a legal manner, and by the proper tribunal in whom the law has vested the power to correct the error complained of.

We contend that the court had no power, at the October term, 1842, to enter any judgment whatever in this cause; that the court had not then any jurisdiction over it. The cause had been discontinued from the docket of the court, and could not be brought before the court again, either by motion or by any other process, but by a writ of *procedendo* from the Supreme Court, reversing the judgment of April upon a writ of error. After the judgment of April, the case was no longer on the docket of the court, and the court had no authority to enter a continuance, *nunc pro tunc*, to regain a jurisdiction over the cause, when its judicial functions had ceased to exist in relation to it. As well might the court docket a new case, *nunc pro tunc*, with all its previous proceedings made out in form, and proceed to render a judgment upon motion, without a rule to the opposite party to show cause against it, as to do what appears by this record was done, so far as either proceeding would be justified by the law. For an authority that there was a discontinuance of this cause, and that the District Court could not again assume any jurisdiction over it, except the case had been remanded from the Supreme Court, I refer the court to Graham's Practice, 493, to 8 Petersdorff, 387, and the cases there referred to. In the first case, where a *venire* was returnable on the first day of the term, and the distringas was dated the day after, the court held it to be a discontinuance, because every process must be tested on the day it is awarded. Here there was a space of one day, when the court had no jurisdiction over the case, and it was adjudged a discontinuance. In the case at bar, there were six months when the court had no jurisdiction over the action, and execution had been issued and returned, and a writ of error was pending; yet the court resumed a jurisdiction, entered a continuance contrary to the fact, when the case was never intended to be continued in contemplation of law, and rendered a judgment. So, in 8 Petersdorff, No. 13, 390, the court say, — "There is a discontinuance, because the action was not regularly continued from term to term." Here, in the case at bar, the record shows that there was not any continuance of the cause whatever. In No. 15, same page, the court say, — "On a writ of error, if a continuance be not alleged, it shall be intended a discontinuance, for it is so in fact."

How the court could preface their second judgment by the

declaration, that no judgment had been rendered on the verdict, when the first judgment was staring it in the face, is, to me, inconceivable. It is something more than a legal fiction.

We think the Supreme Court erred, in rejecting the bills of exceptions referred to in the 9th error assigned. In the statute of Iowa of January 25th, 1839, section 19, entitled " An act regulating practice in the District Courts," &c., page 375, will be found the law of the Territory relating to bills of exceptions. The statute simply requires that they should be reduced to writing during the progress of the trial. The other provisions of the statute are not material to this cause. This was done in our case. See the transcript, page 24. The bills were prepared during the progress of the trial ; they were then reduced to writing, as the exceptions arose. The counsel not agreeing to all the facts stated in the bills, they were submitted to the court for correction, in its discretion, according to the facts, and to sign, seal, and deliver them into the office of the clerk, with the papers in the cause, in the event that the motion for a new trial, held under advisement, should not prevail. The court *mislaid* the bills, but never *refused* to sign them. At length they were found, signed, and returned, as seen by the record. The Supreme Court rejected them because they were not filed in time.

We hold it to be both law and universal practice, that when any controversy arises between parties, in settling a bill of exceptions, an application can only be made to the court to correct the bill, according to the facts, which the court is always presumed to possess and retain  The bills become a part of the record of the court, and are always under its control, and the court is as much bound, as an important part of its duty, to see its bills correctly made out, as it is to inspect and correct any other portion of its records and proceedings. In relation to this matter, all that we could do was to reduce our exceptions to writing, as *we* understood the facts to be. If the other party objected to any of our statements, a reference could alone be made to the court to decide the matter between us, and to correct the bills according to the facts. This we did, and in proper time, under the statute. We submitted our bills to the court for its judgment upon them. The court held them, with the papers in the cause, to decide the motion for a new trial. The court mislaid the bills, found them again, signed and sealed them, as we had prepared them, without an alteration ; the best evidence, one would think, that they were deemed, by the court, to be correct.

But the Supreme Court rejected them because they were not

in time, although the judge held them in his hands from the time of the verdict until he signed and filed them. Was it our fault that they were not sooner in the record ? The cause had not come on for trial before the Supreme Court, upon the writs of error. We then applied for a mandamus to the judge below, to sign the bills, *nunc pro tunc*, as of the term of the trial, and when they were placed in his possession. This would have taken them out of the objection to our exceptions. But the court overruled our motion. In the haste with which this argument has been prepared, I have not been able here to refer the court to authority upon this point of our case. Most of the decisions of the courts, arising upon the subject of bills of exceptions, are based upon the particular facts of each case, or limited by statutory provisions ; — a case analogous to the one at bar is, probably, not to be found reported.

The eleventh error assigned has been noticed in a previous part of this argument. That the court erred, in reversing the first judgment of April 12th, 1842, upon the ground assumed by the court, we cannot doubt. We think the court erred, in a still greater degree, in affirming the second judgment of the 7th of October ; the second judgment, which is our 12th specific error assigned. If the District Court erred, in reversing its own judgment at a subsequent term, or striking it out of the record after an execution had been issued and returned, and after the cause had been removed from the jurisdiction of the court by a writ of error that was then pending, it seems to us that the Supreme Court doubly erred in sustaining both proceedings, and in affirming the second judgment.

*Mr. Grant's* argument, for the defendant in error, upon the above points, was as follows : —

The 9th assignment of error is the first one for the consideration of this court, to wit : — " Striking the bill of exceptions of 21 December, 1843, from the records of the Supreme Court."

In discussing this point, we make this preliminary question, that this bill of exceptions is not a part of record here, and the propriety of rejecting it cannot be examined by the court. True, the clerk has sent it here, but unless it be a part of the record, the court will not examine it.

" Nothing but what constitutes the record of the court below will be examined here." — Davis *v.* Packard, 6 Peters, 411.

" The plaintiff relies, for a reversal of the judgment, on his having been entitled to a continuance, in consequence of an affidavit alleged to have been made in his behalf, and on his having objected to the cancelling the order of continuance. These grounds of error, however, do not appear of record. The affi-

davit and objection of the plaintiff could only be shown by a bill of exceptions. The transcript of the record, to be sure, contains a copy of the affidavit of continuance, together with a statement of the clerk, that he objected to proceeding to trial after the order of continuance, and that he tendered a bill of exceptions to the opinion of the court ordering the trial, which the court refused to sign. These circumstances, however, are only the statements of the clerk, and *constitute no part of the record.*" — Wilson *v.* Coles, 2 Blackford, 403.

The bill of exceptions, filed with the record in the Iowa Supreme Court, was stricken from the record; it constituted a part of the record no longer, and to make it a part of the record here, it must have been embodied and made a part of the bill of exceptions to the decision of the Iowa Supreme Court. It was not. See record, pages 32 and 33.

On this point, we refer to the following authorities : — Huston *v.* Brown, 1 Blackford, 429 ; Henderson *v.* McKee, 1 ib. 347 ; Hays *v.* McKee, 2 ib. 11 ; Vanlandingham *v.* Fellows, 1 Scammon, 283 ; Huff *v.* Gilbert, 4 Blackford, 20,

A bill of exceptions is a "pleading of the party, and is to be construed most strongly against him who alleges the exception." — Rogers *v.* Hale, 3 Scammon, 6.

"A bill of exceptions is the method of placing on the record matters which do not properly belong to it, and it should contain the matter so intended to be placed on the record. A reference in the bill is not sufficient." — Berry *v.* Hale, 1 Howard, Miss. 315.

"When the clerk transcribed certain records intended to be placed in the bill of exceptions, and stated that they were the records and executions referred to in the bill of exceptions; held, it did not spread them on the record." — Maundrig *v.* Rigby, 4 Howard, Miss. 222.

The bill of exceptions in this case, pages 32 and 33, does not identify the paper referred to.

"The bill of exceptions refers to some extrinsic paper or document, which is said to be marked B, and to be considered part of the bill of exceptions; but what that document is we do not know, for, in looking through the record, we find no document which has such a mark, or is otherwise identified. It is true, there is in the subsequent history of the case a document; but it has no mark of identity with the one referred to by the judge in the bill of exceptions." — Oliver *v.* State, 5 Howard, Miss. 14 – 18.

"Nothing which does not properly belong to the record is part of it, unless inserted in the bill of exceptions."

A bill of exceptions, stating that "the following evidence

23 *

was offered," then adding, " here insert the same," is incomplete, and does not make part of the record the evidence thus attempted to be embraced in it, though contained in the transcript of the record. Rankin *v.* Holloway, 3 Smedes & Marshall, 614.

" It is said there was a motion to quash the writ, and that the motion was improperly overruled ; but as the writ is not inserted in the record, we have no means of examining the objection, and must presume the decision correct." — State Bank *v.* Brook, 4 Blackford, 485.

[Opinion in the text, near bottom of page ; there is no reference to it in the marginal note.]

The bill of exceptions of the District Court of Scott county was stricken from the records of the Supreme Court of Iowa ; how can it be made a part of the record here, unless included in the bill of exceptions taken to thei· decision ? Strike it out of pages 16 et seq., and what is there in the bill of exceptions, pages 32 and 33, to bring it before this court ?

But admit that it is properly here, we say that the 9th error is not well assigned ; the Iowa Supreme Court decided correctly in striking it from the record.

The plaintiffs in error, in their printed argument by *Learned,* produce no authority on this point, place great stress on the supposed fact, nowhere existing in reality, and nowhere appearing on the record, that the exceptions were by counsel reduced to writing during the progress of the trial, and by inference tender · to the court, and that the Iowa Supreme Court rejected the bill of exceptions, because it was not filed during the trial.

" Most of the decisions of courts," says *Learned,* for plaintiffs in error, " on the subject of bills of exceptions, are based upon the particular facts of each case, or limited by statutory provisions. A case analogous to the one at bar is, probably, not to be found reported." If by this he refers to his side of the case, we shall not deny it, but we show both authority and statutory provisions in favor of rejecting this bill of exceptions. The words, " *no entry of record,*" that the bill of exceptions was tendered at the trial, are emphasized in the statement of the counsel for the plaintiffs in error, thereby intending, we suppose, to convey the idea that it appears in some other way.

" The statement of the bill of exceptions, as to the time when it was taken, will prevail over the memorandum of the clerk." — Carpnew *v.* Carravan, 4 Howard, Miss. 370.

" The bill of exceptions must show affirmatively that the exception was taken at the trial, and if it does not so appear, the error will be fatal." — Patterson *v.* Phillips, 1 Howard, Miss. 572.

Perhaps Howard's Mississippi Reports are not high enough authority for counsel. Hear the opinion of this court.

"It is not necessary," under laws of the United States, "that a bill of exceptions should be formally drawn and signed before the trial is at an end. The exception may be taken at the trial, and noted by the court, and may afterwards, during the term, be reduced to form, and signed by the judge; but in such case it is signed *nunc pro tunc*, and purports on its face to be the same as if actually reduced to form and signed during the trial; it would be a fatal error if it were to appear otherwise." — Walton v. United States, 9 Wheaton, 651.

The bill of exceptions in this cause was taken, reduced to writing, "signed and sealed this 21st December, 1843," in record, pages 23 and 24. The trial took place in October, 1841, nearly two years before.

It appears conclusively from the bill of exceptions, that it was not taken or tendered during the progress of the trial.

The statutory provisions of the Territory of Iowa will not assist the plaintiffs in error. Indeed, they are perfectly conclusive on this point in favor of the defendant in error.

The act of the Legislature of Iowa, approved January 25, 1839 (see first edition of Iowa laws, printed at Dubuque, in 1839), section 19, provides (375 of the statutes): —

"If, during the progress of any trial, in any civil cause, either party shall allege an exception to the opinion of the court, and reduce the same to writing, it shall be the duty of the judge to allow said bill of exceptions, and to sign and seal the same; and said bill of exceptions shall thereupon become a part of the records of such cause; and if any judge refuse to allow and sign said bill of exceptions tendered, and the same is signed by three or more disinterested by-standers, or attorneys of said court, the judge shall then permit the said bill to be filed, and become part of the record," &c.

*Mr. Grant* then examined the cases from Missouri and Illinois, which States had statutes similar to Iowa, citing 7 Missouri, 351; 3 Scammon, 6, 17, 24, 63; 2 Scammon, 253–256, 490. And cited, also, 9 John. Ch. 345; 3 Cowen, 32.

This court has decided no less than fifteen causes on bills of exceptions, down to 13 Peters. We will cite only such as bear directly on the case at bar.

Walton v. United States, 9 Wheaton, 657, has been referred to. Ex parte Martha Bradstreet is, to our mind, conclusive for our client.

"On the trial of a cause in the District Court of New York, exceptions were taken to the opinions of the court, delivered during the progress of the trial; and, some time after the trial

was over, a bill of exceptions was tendered to the judge, which he refused to sign, objecting to some of the matters stated in the same, and at the same time altering the bill so tendered, so as to conform to his recollections of the facts, and inserting in the bill all that he deemed proper to be contained in the same; which bill, thus altered, was signed by the judge."

"A rule was granted to show cause, and the judge returned the foregoing facts.

"By the court. This is not a case in which a judge has refused to sign a bill of exceptions. The judge has signed such a bill of exceptions as he thinks correct. The object of the rule is to compel the judge to sign a particular bill of exceptions which has been offered him. The court granted a rule to show cause, and the judge has shown cause by saying he has done all that can be required of him," &c.

"The law requires that a bill of exceptions should be taken at the trial. If a party intends to take a bill of exceptions, he should give notice to the judge at the trial; and if he does not file it at the trial, he should move the judge to assign a reasonable time within which he may file it. A practice to file it after the term must be understood to be matter of consent between the parties, unless the judge has made an express order in term, allowing such a period to prepare it." Ex parte Martha Bradstreet, 4 Peters, 102.

10th error. "The Supreme Court erred in refusing the motion of the plaintiff in error for a mandamus to the judge of the District Court." How comes this assignment of error in the case of Sheppard et al. *v.* Wilson, defendant in error, here?

That was an *ex parte* proceeding against Judge Thomas Wilson of the District Court, to compel him, by mandamus, to sign a bill of exceptions. Has any writ of error been sued out against Judge Wilson? Has he been cited to appear here? The proceedings against him form no part whatever of the suit of Sheppard et al. *v.* John Wilson; but if they did, and this court can examine the question, it is settled by the case of Ex parte Martha Bradstreet.

The counsel for Sheppard et al. made a motion for a writ to compel Judge Thomas S. Wilson to sign and seal a particular bill of exceptions, or show cause; the motion is based on a statement of facts, *ex parte*, which shows that no exceptions were tendered during the trial; that the next day after the trial the bill was tendered, and, the parties not being able to agree as to the bill, Sheppard's counsel delivered the bill to the court, requested the judge to correct, and, when corrected, to sign it.

The bill of exceptions was not tendered during the trial, as

the law of Iowa requires. No other time was appointed or allowed for tendering, as the laws of the United States require. It was not, when tendered after the trial, such an one as the judge could sign until he had corrected it by his notes. In other words, the party requested the judge to do what the law requires him to do, — to prepare a correct bill of exceptions; and because the judge neglected to prepare a new one, they wish the court to compel him to sign a particular bill, which they admit was imperfect.

But a mandamus will not lie, in Iowa, to a judge, to compel him to sign a bill of exceptions. This writ issues only when there is no other adequate remedy. By the laws of Iowa of 1839, already quoted, if the judge refuses to sign a bill of exceptions, the by-standers may do it; and if the judge refuse to allow it, when signed by them, to be placed on the record, the Supreme Court, on affidavit, admits it to the record. No mandamus can issue in Iowa in such a case; the legislature have provided a party another remedy.

(The remainder of *Mr. Grant's* argument is omitted.)

Mr. Justice GRIER delivered the opinion of the court.

When this case was before this court at the last term, on a motion to dismiss the writ of error (see 5 Howard, 211), one of the reasons urged was, — " That, Iowa having been admitted into the Union as a State since the writ of error was brought, the act of 1838, regulating its judicial proceedings as a Territory, is necessarily abrogated and repealed; and consequently there is no law in force authorizing this court to reëxamine and affirm or reverse a judgment rendered by the Supreme Court of the Territory, or giving this court any jurisdiction over it." And, the court there say, — " This difficulty has been removed by an act of Congress, passed during the present session, which authorizes the court to proceed to hear and determine cases of this description." It afterwards appeared that this court had been misinformed on this subject, and that by mistake the State of Iowa had been omitted in the act of 22d February, 1847. Since that time (at the present session of Congress), an act has been passed to remedy this omission (see act of 22d of February, 1848), and the court have proceeded to hear and determine the case on the errors assigned.

Of the numerous errors assigned in this case, but three can be noticed as coming properly under the cognizance of this court. The cause was originally tried before the District Court of Scott county, and removed, by writ of error, to the Supreme Court of the Territory of Iowa. That court struck from the record the bills of exceptions alleged to have been taken on the

trial in the court below. Consequently, the matters said to be contained in those bills are not before this court.

But bills of exceptions were taken by the plaintiffs in error to the ruling of the Supreme Court of Iowa, in rejecting the bills sealed by the District Court, and in refusing to grant a mandamus to the judge of the District Court to sign a bill of exceptions *nunc pro tunc;* and this rejection and refusal are now assigned for error in this court. It has been questioned whether the action of the Supreme Court of Iowa on these points is the proper subject of a bill of exceptions, or can be reviewed in this court. But as we perceive no error in the course pursued by the court, it will be unnecessary to notice these objections.

The case was tried in the District Court of Scott county at October term, 1841, and the bill of exceptions which was struck from the record was dated on the 21st of December, 1843. It did not purport to have been taken on the trial, nor was there any evidence on the record that any exceptions were taken or noted by the judge. And, assuming the fact as stated by the counsel for the defendant below, that he had taken the exceptions during the trial, and had reduced them to form afterwards, yet the bill was not settled during the term in consequence of objection made to certain matters therein by the opposite counsel; and the judge, though he signed a bill two years after the trial, refused to sign it *nunc pro tunc,* as if taken on the trial.

The act of Assembly of Iowa regulating the practice of their courts provides, that " if during the progress of any trial in any civil cause, eithe   party shall allege an exception to the opinion of the court, and reduce the same to writing, it shall be the duty of the judge to allow said exceptions, and to sign and seal the same ; and the said bill of exceptions shall thereupon become a part of the record of such cause ; and if any judge of the District Court shall refuse to allow or sign such bill of exceptions tendered, and the same is signed by three or more disinterested by-standers or attorneys of said court, the judge shall then permit the said bill to be filed and become a part of the record ; if the judge refuse, the Supreme Court of the Territory may, when such cause is brought before them by writ of error or appeal, upon proper affidavit of such refusal, admit such bill of exceptions as part of the record."

This act requires that the exceptions must be taken during the progress of the trial, reduced to writing, and tendered to the judge, and gives ample remed  to the party injured, in case of a refusal to sign them or permit them to be made a part of the record. If the party does not avail himself of the rem-

edy given him by the act, he has no one to blame but himself. It is true, judges may, and often do, sign bills of exception after the trial, *nunc pro tunc*, the bills being dated as if taken on the trial; but the propriety of their refusal to do so on particular occasions depends on so many circumstances which cannot appear on the record, and are known only to themselves, that we ought not to presume they have acted improperly in the exercise of their discretion. Certainly a judge ought not to be called on to make up a bill of exceptions two or more years after a trial, where the counsel have disagreed as to the facts, and failed to settle the exceptions at the term in which the cause was tried. It is too plain for argument, also, that a bill purporting to be taken more than two years after the trial cannot properly be made a part of the record, by any possible construction of this act. It is much more stringent in its requirements as to the time and mode in which a bill of exceptions shall be obtained and placed on record, than the Statute of Westminster 2, which first gave the bill of exceptions. Yet under that statute, the courts have always held that the exception should be taken and reduced to writing at the trial. Not that they need be drawn up in form; but the substance must be reduced to writing whilst the thing is transacting. 1 Bacon's Abr., tit. *Bill of Exceptions.*

The practice is well settled, also, by the decisions of this court. See Ex parte Martha Bradstreet (4 Peters, 106); and the case of Walton *v.* The United States (9 Wheaton, 657), which is precisely parallel with the present. There the objection was made, that the bill of exceptions was not taken at the trial, but purported on its face, as in this case, to have been taken and signed after judgment rendered in the cause. "It is true," say the court, "that the bill of exceptions states that the evidence was objected to at the trial; but it is not said that any exception was then taken to the decision of the court. So that, in fact, it might be true that the objection was made, and yet not insisted upon by way of exception. But the more material consideration is, that the bill of exceptions itself appears, on the record, not to have been taken at all until after the judgment. It is a settled principle, that no bill of exceptions is valid which is not for matter excepted to at the trial. We do not mean to say that it is necessary (and in point of practice we know it to be otherwise) that the bill of exceptions should be formally drawn and signed before the trial is at an end. It will be sufficient if the exception be taken at the trial, and noted by the court with the requisite certainty; and it may afterwards, during the term, according to the rules of the court, be reduced to form, and signed by the judge. And so, in fact, is the gen-

eral practice. But in all such cases, the bill of exceptions is signed *nunc pro tunc*, and it purports on its face to be the same as if actually reduced to writing during the trial. And it would be a fatal error if it were to appear otherwise; for the original authority under which bills of exceptions are allowed has always been considered to be restricted to matters of exception taken pending the trial, and ascertained before verdict."

These cases are conclusive as to the correctness of the proceedings of the Supreme Court of Iowa, in striking out the bill of exceptions and refusing to award a mandamus to compel the district judge to sign a bill *nunc pro tunc*. It will be unnecessary, therefore, for this court to express any opinion on the questions, whether, under the peculiar provisions of the statute of Iowa, a party who had neglected to pursue the course pointed out by it would be entitled, under any circumstances, to the remedy of a mandamus; and if so, whether a refusal by the Supreme Court to grant it could be alleged for error in this court.

The only other assignments of error which can be noticed by this court are those numbered 11 and 12: — "That the Supreme Court erred in affirming the action of the District Court in regard to the judgment of April 12, 1842, on the ground that the supersedeas bond did not appear on the record with the writ of error. And in affirming the judgment rendered by the District Court at October term, 1842."

To understand the nature of these objections, it will be proper to state that this case was tried in the District Court of Scott county, at October term, 1841, and a verdict rendered for the plaintiff; and the defendants having moved for a new trial, the case was continued under a *curia advisare vult*. Owing to a mistake (the cause of which it is unnecessary to explain), the court did not meet at the time appointed by law for the April term in Scott county, but on the week following, which had been fixed for the term of a neighbouring county. On the 12th of April, 1842, an entry was made on the record, overruling the motion for a new trial, and rendering a judgment on the verdict. The mistake was soon after discovered, and the defendants sued out a writ of error to reverse this judgment, as being *coram non judice;* but before the writ was served, at the next regular term of the District Court, in October, 1842, that court, treating the entry made on the record in April as a nullity, because entered by the clerk without any authority from the court, made the following entry of judgment: —

" This day came the said plaintiff, by his attorney, and it appearing to the court that, at a previous term of this court, to wit, the October term, 1841, the issue previously joined in this

.cause was submitted to a jury, who, after hearing the evidence and arguments of counsel, returned into court the following verdict, to wit : — They find the issue for the plaintiff, and assess his damages at the sum of $1,837.50; whereupon a motion was made by the attorney for the defendants for a new trial herein, which motion was, at said October term, taken under advisement by the court. And it further appearing to the court, that this court has not, at any time since, decided said motion, but that said motion was continued under advisement until the present term; that the order of continuance at last term was not entered of record; it is therefore ruled that said order of continuance be entered, *nunc pro tunc.* And the court, having now fully considered the said motion for a new trial, doth overrule the same; and it is further considered by the court, that the plaintiff have and recover," &c. (completing the entry of a judgment in the usual form).

In this action of the court we can see no error, or any just ground of complaint on the part of the plaintiffs in error. If the court had ordered the prior entry, made in April, to be stricken from the record, as a mistake or misprision of the clerk, being made without the authority or order of the court, the record could not have been successfully assailed. The court certainly had full power to amend their records, and are the sole judges of the correctness of the entries made therein; and although they have not said in direct terms that this entry should be erased or stricken from the record, they have done so by violent implication, when they adjudge that the court had never decided the motion for a new trial, and treat the record as if the entry of the 12th of April was not upon it, or had been entirely erased from it. The objection, that the record was beyond the reach of amendment, because the writ of error had become a supersedeas and removed it to the Supreme Court, is not founded in fact. The writ of error had not been served on the court, and the record was therefore legally, as well as physically, in possession of the District Court, and subject to amendment. In order to a supersedeas, the statute of Iowa evidently requires a service of the writ upon the court below, and not only so, but "that one of the judges of the Supreme Court shall indorse upon the transcript of the court below allowance of said writ of error for probable cause ; and in such cases, the party issuing such writ shall give bond to the opposite party, with good security," &c. There is no evidence on the record, that any of these requisites had been complied with.

It is, perhaps, hardly necessary to state that this case bears no resemblance to that of The United States Bank *v.* Moss,

decided at this term. There, the Circuit Court had set aside a regular valid judgment entered by the court at a former term, after a verdict and trial on the merits; not on the ground that the clerk had made the entry by mistake or without proper authority from the court, but because of some supposed error in law. This case exhibits a question of amendment, and nothing more; it was, therefore, wholly within the discretion of the court below, who were acquainted with all the facts, and belonged appropriately and exclusively to them. Matheson *v.* Grant, 2 Howard, 263, 284. Besides, the action of the court wrought no injury to the plaintiffs in error. If they had removed the record to the Supreme Court by the first writ of error before this amendment was made, and obtained a reversal of the judgment because it was entered without the authority of a properly constituted court, the Supreme Court would have remitted the record, with orders to proceed and enter a regular judgment on the verdict.

The objection, that the court below could not make this amendment for want of a continuance, is hardly worthy of notice. The entry of C. A. V. operates as a continuance, and if it did not, a continuance could be entered at any time to effect the purposes of justice. Such technical objections have long ceased to be of any avail in any court, and are entirely cut off by the statute of jeofails of Iowa of 24th January, 1839, section 6.

The judgment of the Supreme Court of Iowa must be affirmed.

### Order.

This cause came on to be heard on the transcript of the record from the Supreme Court of the Territory of Iowa, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Supreme Court in this cause be and the same is hereby affirmed, with costs and damages at the rate of six per centum per annum.