KEARNEY, Administrator, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

RAILROADS: CONTRIBUTORY NEGLIGENCE. *Two findings of special verdict held inconsistent.*

M., a young and vigorous man, whose sight and hearing were sound and unimpaired, being at a point about 253 feet west of a railroad, in a village, and having his horses hitched on the same street about 225 feet east of the railroad, heard the long whistle of an approaching locomotive engine, and immediately commenced running down the street towards his horses. At that time the train was about half a mile distant from the street crossing, and it whistled again when about a quarter of a mile distant; it was hidden from M.'s sight until he was within about twenty

feet of the track, when he might have seen it by looking in that direction; and, being a light special train, it was running about forty miles per hour, and without ringing the bell on its approach. The passenger trains of the company usually run at the rate of twenty miles, and its freight trains at the rate of twelve miles per hour; and a freight train was due near that time. M. did not cease running, or diminish his speed, until he was in the act of stepping on the first rail of the main track, when he was struck by the train and killed — the whistle for the brakes being sounded at the same moment. The jury, by special verdict, found that M., after hearing the whistle and the noise of the train, and seeing it, attempted to cross the track in front of the locomotive; that if he had stopped just before going upon the land included within defendant's right of way, and looked in the proper direction, he could have seen the train; and that he was not guilty of any want of ordinary care in running upon the track as he did. *Held*, that, in view of the evidence, these findings are *inconsistent*, and it was error to refuse a new trial.

TAYLOR, J., dissented.

APPEAL from the Circuit Court for *Columbia* County.

Action for injuries to the plaintiff's intestate resulting in his death, alleged to have been caused by defendant's negligence. The facts in evidence will sufficiently appear from the opinions of Justices COLE and TAYLOR. Plaintiff had a verdict and judgment; and defendant appealed.

*Melbert B. Cary*, for the appellant.

*T. L. Kennan*, for the respondent.

COLE, J. With but little change, the language of the chief justice in *Haas v. The Chicago & Northwestern Railway Co.*, 41 Wis., 44, so accurately and properly applies to the questions in this case, that I cannot do better than to quote it. Here, as there, the evidence is abundant to warrant the finding that those in charge of the train on the defendant's road were guilty of a want of ordinary care in running at such an unusual and dangerous speed into the village of Rio. The excuse offered for this act — that it was necessary for the superintendent of the road to immediately reach the Wisconsin river at Kilbourn City, to examine into the safety of the bridge at that point —

in some degree extenuates, but does not fully justify, the fault, in view of the limited precautions taken to guard against injuries to persons crossing the track. But, while this is so, we observe here, as was remarked there, that " the evidence on both sides tended strongly to show contributory negligence on the part of the deceased. The cause will probably be tried again, and new evidence may vary or qualify the facts. We therefore refrain from ruling, on this appeal, whether or not the evidence appears to us sufficient to establish contributory negligence as a matter of law for the court."

It appears that the deceased, William Miller, on the 12th day of April, 1877, drove from his farm to the village of Rio, about one and a half miles distant, hitched his team in Rio street, in front of Ulrich's hotel, on the west side of the railroad, about 225 feet from where the track of defendant's road crosses the highway, and left them there. Shortly afterwards, and about the middle of the forenoon, Miller was in the office of Fosgate's hotel, situated on the same highway, but on the other side of the railroad track, and distant therefrom 253 feet, engaged in conversation. As he concludes his conversation, and is passing out of the door onto the highway, the long whistle of an approaching locomotive engine up in the cut towards Milwaukee is heard by each one of plaintiff's witnesses who were in the village that morning, and by the person to whom Miller had just been talking. Just then, suddenly, and without any other apparent cause, he commenced running very fast down the middle of Rio street, towards his horses, hitched on the other side of the track. He continues down the street without diminishing his speed, crosses the side track, and is just in the act of stepping over the first rail of the main track, when he is struck by the pilot, and receives the injury from which he died. The whistle was sounded at the cut, also half way between the cut and Rio street, and was sounded for the brakes just at the moment the deceased was struck. The railroad track crosses Rio street at the business centre of said vil-

lage, within a few feet of the front door of the post-office, and between the post-office and depot. From the place where Miller started to run, down to within eight feet of the side track, his view of the approaching train was more or less obstructed by buildings and lumber piled between Rio street and the railroad, in the direction from which the train was approaching; but after he got within about eight feet of the side track, his view up the track towards the approaching engine would be unobstructed for nearly half a mile. Miller's senses of sight and hearing were sound and unimpaired, and it does not appear that anything occurred while he was running to unexpectedly divert or attract his attention. His horses were standing where he tied them, and remained there after the train had passed.

The jury found, in answer to questions submitted, that Miller, after hearing the whistle of the approaching train, after hearing the noise of the approaching train, and after seeing the approaching train, attempted to cross the defendant's track in front of the locomotive; that had he stopped to look out in the direction this train was approaching, just before entering upon the defendant's right of way and track, he could have seen the train; and that he was not guilty of a want of ordinary care and prudence in not avoiding the accident, or in running upon the track in the manner he did, which contributed to produce the injury.

"We cannot but regard these findings as inconsistent with each other. There is nothing in the case tending to show any overruling necessity to the unfortunate man to incur the fearful and fatal risk; nothing to show why he did not and could not have stopped" before entering upon the track, "and awaited the passing of the train. The attempt to cross appears to have been a wanton exposure of life to instant and terrible danger. And surely" it would seem that "he could have avoided it by the easiest exercise of ordinary care, by simply obeying the most natural instinct of any intelligent

creature in the circumstances, by merely stopping" before he reached the track, "until the train had passed."

Now it cannot with any propriety be said that the deceased was in the position of one who is paralyzed by some sudden danger, or confused by having to make an immediate choice between two perilous alternatives; for he ran directly into danger. Seeing the swiftly approaching train, he made no halt, but continued his course, and was in the act of stepping over the first rail of the main track, when he was struck and sustained the injuries from which he died. In view of the evidence, we think the findings of the jury are absolutely so inconsistent with each other as to warrant us in setting them aside.

The judgment of the circuit court must therefore be reversed, and a new trial ordered.

TAYLOR, J. This action is brought against the defendant company for negligently killing William Miller, of whose estate the plaintiff is administrator. The death of Miller occurred under the following circumstances: On the 12th of April, 1877, he came into the village of Rio, in Columbia county, with his team and wagon. He hitched his team at the side of the main street of the village, 225 feet west of the track of the defendant's railroad, at the point where it crosses said street, and then went up the street to a hotel 253 feet east of the railroad track, and transacted some business there; and, while conversing with a person at that place, he heard the whistle of an approaching train one-half a mile east of the place where the road crosses said street. Immediately upon hearing the whistle, he started upon a fast run along the street towards the place where his horses were hitched, and did not stop or lessen his speed until he stepped upon the main track of the railroad, when he was struck by the approaching engine and instantly killed. The evidence showed that his team of horses were young and spirited; that he was

a young man about thirty years old, having a wife and children, ordinarily intelligent, and a careful and prudent man; that the train by which he was killed was coming from the east, and not a regular train, but one sent out with an officer of the road to attend to important business at Kilbourn, and was composed of only the engine, tender, and one car; that the people at Rio had no notice that such train was to pass over the road at that time; that it was running at the rate of at least forty miles per hour when it crossed the street and killed the deceased, and that no bell was rung within eighty rods of said crossing; that Rio was a station on the road at which passenger trains stopped, and that a freight train was due at that place within a few minutes after the accident happened; that the ordinary passenger trains ran at about the rate of twenty miles per hour, and freight trains at about twelve miles per hour; that the passenger depot was a few rods west of the street crossing where the accident happened; that in running down the street, from where the deceased started to within twenty-one feet of where the main track of the road crossed the street, his view of the approaching train was partially obstructed; and that the deceased lived within two miles of the village, and had a general knowledge of the time when trains passed through.

Upon this state of facts, the defendant insisted that the court ought to have directed a peremptory nonsuit. This was refused, and the case was submitted to the jury for a special verdict. The jury found that the company was guilty of negligence, and that the deceased was not guilty of any contributory negligence.

It is insisted upon this appeal, that the evidence shows a state of facts which requires the court to say, as a matter of law, that the deceased was guilty of contributory negligence, and that his administrator cannot recover in this action. The reason given by the learned circuit judge who presided at the trial of this case in the court below, for refusing to grant a

new trial on the motion of the defendant, satisfies me that, upon all the facts of this case, the question of contributory negligence was a question of fact for the jury, and not of law for the court.

What amounts to the want of ordinary care on the part of an individual, when predicated. upon any one of his acts, depends upon such a variety of circumstances in almost every case, that it is impossible to lay down any general rule which can govern. It is seldom that any two acts which result in an injury occur under the same or even like circumstances. What would be rashness in one man might be but an act of ordinary prudence in another. A strong, vigorous and agile young man might with safety, and without being chargeable with want of ordinary care, leap a ditch or chasm which would be little short of suicide if attempted by another who was enfeebled by age or sickness. It might be a rash act in a man whose strength had been wasted and his limbs stiffened by old age, to attempt to pass a railroad track in front of an approaching train, even though such train might be a hundred or even two hundred feet distant; but the young man full of youthful vigor, with strong limb and firm step, might cross the same under like circumstances without subjecting himself to the charge of want of ordinary care.

No general rule has been attempted to be laid down by any of the courts upon this subject, and none can be. Each case must depend upon its own circumstances. And unless, in a given case, the facts are conclusive, the question is for the jury and not the court. This is evident from an examination of a few of the cases decided in this court. In the case of *Urbanek v. Railway Co., ante,* p. 59, this court held that it could not say, as a matter of law, that the plaintiff was guilty of contributory negligence, although the evidence showed that he permitted his team to run against a passing train, and he was thereby injured. The evidence showed that he was driving his team before a loaded wagon; that

in approaching the railroad crossing he had to approach through a deep cut, so that he could not see the train until it passed in front of him; and, the evidence tending to show that he could not stop his team, on account of the descent in the road, after the train came in sight, the question of contributory negligence was submitted to the jury, and a verdict in favor of the plaintiff was affirmed. In the case of *Ditberner v. Railway Co.*, *ante*, p. 138, we held that an employee whose business was to repair the track in the station yard, was not, as a matter of law, guilty of contributory negligence, although he stood on the track with his back to the train, and the train approaching slowly struck him in the back and injured him. In this case, the circumstance that the person injured was the employee of the company, and engaged at his ordinary work, was controlling in his favor. Had he been a stranger to the company, this court would probably, as it did in the case of *Delaney v. Railway Co.*, 33 Wis., 67, have held that he could not recover, because he was careless in standing on the railroad track.

In the case at bar, it is quite clear that if the train which did the injury had been either an ordinary passenger or freight train, the deceased would not have been injured; that he would, in the case of an ordinary passenger train, have passed the track a quarter of a mile in advance of it; and had it been an ordinary freight train, he would have passed it still further in advance. The evidence shows, and I think most satisfactorily, that the train came at the rate of forty miles per hour, and yet the deceased reached the track at the same time it reached the crossing. It had run a half mile from the time the deceased started until he reached the track; had it run half as fast as it did, or twenty miles per hour, it would have been just one-quarter of a mile from the crossing when the deceased reached it. I cannot say, upon this state of the case, that the deceased was guilty of any negligence, when he heard the whistle of the approaching train, in start-

ing for the purpose of crossing the track and securing his team while the train passed; and I think it is a fair inference from all the circumstances of the case, that such was his object. He had no reason to suppose, when he started, that there was a train approaching at the speed of forty miles per hour; the whole history of the management of the road negatived any such presumption; and it was not careless in this unfortunate man that, relying upon the custom of the road, he concluded he could pass it with safety before the train reached the crossing, and that he started down the street for that purpose. But it is said that, admitting that he was not guilty of any carelessness or rashness in first setting out to cross the road, he should have watched the approaching train, and, when he came near the track, have discovered the dangerous speed at which it was approaching, and have then stopped. If he saw the train when he got within twenty feet of the track, it must have been then more than two hundred feet from the crossing, because the evidence shows that it ran at the rate of ten feet to the deceased's one; and if it had been running at the speed the deceased had a right to suppose it would be running, he could have safely crossed even then.

I do not think we are called upon as a matter of law to say that the deceased was guilty of culpable negligence because, when he got near the track and saw the train nearer than he had reason to expect it would be, he did not instantly discover that it was approaching at a very unusual speed and instantly stop. Up to the instant he came within twenty feet of the track, he had every reason to believe the train was not within one-fourth of a mile of him. That it was, in fact, much nearer was the culpable fault of the defendant in approaching the crossing at such an unusual and dangerous rate of speed, and without warning. The confusion created in the mind of the deceased (if we are permitted to suppose that there was any such confusion) was caused by the wrongful acts of the defendant, and it does not lie with them to say that the deceased

should have acted more coolly. We must presume that this strong young man, in the very prime and vigor of his life, did not purposely throw himself in the track of this death-dealing engine, nor throw himself on the track without the firm belief that it was safe to do so. The result shows that he made a fearful mistake, and the mistake cost him his life; but if the acts of the defendant caused the mistake, or led him into it, he is without fault. And when his representatives prosecute the guilty company for a slight compensation for the death caused by this mistake, which the deceased was led into by its gross wrong, it is most unjust to charge upon him that he culpably threw away his life.

In Shearman and Redfield's work on Negligence, § 30, it is said: "So, too, allowance is made for circumstances, and if, by the defendant's fault, the plaintiff is suddenly put in danger, the plaintiff is excused for omitting some precautions, under the disturbing influence of fear, which, if his mind had been clear, he ought to have taken." This rule is well sustained by the decisions of this court, as well as by those of other states, and is in itself a most reasonable one. Applying the rule to this case, we find the deceased approaching the track at a rapid rate, in the full assurance that he had ample time to cross the track in front of the approaching train; and when he arrives within a few feet of the track, he is suddenly, and by the clear misconduct of the defendant, put in a position of great peril if he proceeds. But even then the extent of his peril was not clearly and instantly apparent. He made a mistake, and went forward; and it is now urged that he was killed by his own fault. I cannot say that, from the facts proved, it is so as a matter of law. As was said by the late learned Chief Justice Dixon, in the case of *Barstow v. The City of Berlin*, 34 Wis., 357, 363: "Negligence, like fraud, is not to be presumed, but must be proved; or at least there must be some facts upon which to base the inference. I agree that the inference might have been upheld upon the facts of the case; but

it seems to me it was an inference of fact and not of law, and so one to have been drawn by the jury and not by the court. Like some other cases, very peculiar in their circumstances, which have arisen, it was at best but a leap in the dark, and I think it was for the jury to take that leap. It was for the jury to guess; and as they guessed, so the decision must have been. I think the court was wrong in attempting to cut the knot instead of handing it to the jury to cut." Similar language was used by Justice COLE in *Ewen v. Railway Company*, 38 Wis., 613–631: "It appears to us it would be incorrect to say, as a proposition of law, that if the child was capable of exercising the same degree of care with respect to crossing the track as would reasonably be expected from an adult, then he was guilty of such negligence as prevented a recovery. *This is to strike out of view all the circumstances attending the transaction which might possibly prevent an adult, in the exercise of ordinary prudence,* from avoiding the injury. The general rule as to the duty of a person crossing a railroad track to look about him, and not rush blindly into danger, was stated by the court. But certainly, in determining the question of contributory negligence, it would be proper for the jury to consider the situation of the different tracks at the crossing. The fact that cars were standing on the track of the iron company, which to some extent cut off the view of the approaching engine and tender on the defendant's track; *the fact that the engine was backing down the track at an unlawful speed, which might well deceive one calculating the chances of a safe crossing;* and the further fact that a train was coming in the opposite direction on the St. Paul road, which might divert the attention — these facts should all enter into the consideration of the question whether a person would be excusable in not seeing the approaching engine; and therefore a want of due care could not necessarily be predicated upon the mere circumstance that the boy did not see the engine, if such was really the case." In the case of *Newson v. Railroad Company*, 29 N. Y., 383,

389, Justice Johnson, who delivered the opinion of the court, very justly and forcibly says: "It would be going too far in favor of these corporations, using these weighty forces, so irresistible and so dangerous to those happening to come in their way, to hold as a matter of law that a person receiving an injury had been negligent, and so remediless, *unless he acted upon the assumption that they would in any case act in total disregard of his rights, and their own plain duty towards him and others.*"

In the case of *D. & M. Railroad Company v. Steinburg,* 17 Mich., 99, the question when contributory negligence was a question of fact for the jury, and when of law for the court, was discussed at great length both by counsel and the court; and Chief Justice Cooley, who delivered the opinion, comes to the conclusion that as a general rule the question of such negligence is a question of fact for the jury, and to warrant the court in any case in taking that fact from the jury, and instructing them as a matter of law that the plaintiff was guilty of such negligence, the case must be so clear against him as to warrant no other inference. And I do not understand that this court, in any adjudicated case, has laid down or intended to lay down a different rule. In discussing the question as to the propriety of the court passing upon the question as one of law, where the misconduct of the defendant increases the danger in which the plaintiff is placed at the time, the learned chief justice says: "Negligence, as I understand it, consists in a want of that reasonable care which would be exercised by a person of ordinary prudence, under all the existing circumstances, in view of the probable danger of injury. The inquiry is, therefore, one which must take into consideration all the circumstances, and it must measure the prudence of the party's conduct by a standard of behavior likely to have been adopted by other persons of common prudence. Moreover, if the danger depends at all upon the action of any other person, under a given set of circumstances, *the prudence of the party injured*

*must be estimated in view of what he had a right to expect from such other person, and he is not to be considered blamable if the injury has resulted from the action of another which he could not reasonably have anticipated.* Thus the problem is complicated by the necessity of taking into account the two sets of circumstances affecting the conduct of different persons, and is only to be satisfactorily solved by the jury placing themselves in the position of the injured person, and examining those circumstances as they then presented themselves to him, and from that standpoint judging whether he was guilty of negligence or not. *It is evident that such a problem cannot usually be one upon which the law can pronounce a definite sentence, and that it must be left to the sifting and determination of a jury."*

Cases might be cited by the hundred to show that, in order to take the question of contributory negligence from the jury, all the facts and circumstances must be so plain and clear that a person of ordinary intelligence must be satisfied that the act was not an act which a person of ordinary prudence would have done under those circumstances. If the circumstances leave a fair doubt in the mind that the act would have been done by a man of ordinary prudence, under like circumstances, then it is a question for the jury and not for the court. Precedents are of little aid in determining a question of this kind. Every case is surrounded by its own circumstances, and no two cases in a thousand will be likely to be attended by exactly the like state of facts. Courts of last resort have enough to do without dealing with questions of pure fact. In the case of *Smith v. Railway Co.*, L. R., 5 Com. Pleas, 102, which was a question of negligence, Justice BRETT says: "I am of the opinion that there was no evidence to go to the jury, of negligence on the part of the defendant;" and then remarks: "I cannot help feeling that great difficulty is thrown upon the judges who are called upon to determine questions of this sort, which makes them too much judges of

facts." He then goes on to hold that in his opinion there was no evidence of negligence to go to the jury; yet in the same case his associates, Chief Justice BOVILL and Justice KEATING, who concur in feeling the difficulty in which they are placed by having to deal with these questions of fact, come to a differ-ent conclusion, and hold that in their opinions there was evidence to go to the jury upon this question of negligence. In the case of *Butler v. Railway Co.*, 28 Wis., 487, the late Chief Justice DIXON quotes the remark of Justice BRETT above given, and says: "The present case is well adapted to illustrate its truth, especially so far as the latter question, or that of contributory negligence, is concerned;" and, after struggling with the case through a long and able argument, he comes to the conclusion that the question of contributory negligence was properly submitted to the jury, and that the refusal of the court, under all circumstances of that case, to charge the jury that "if he (the deceased) saw the cars approaching, or might have seen them by looking, he was guilty of negligence," was not error.

I do not think that as a matter of law we can say that the answers of the jury to questions 25, 26, 27, 28 and 29, when viewed in the light of the evidence given on the trial, are necessarily inconsistent with each other, and therefore require the reversal of the judgment for the plaintiff rendered thereon. To the 25th question the jury say, the deceased did not know that the train was about to strike him, long enough to have stopped and avoided contact with it before he was struck. To the 26th they say that, after hearing the whistle and the noise of the approaching train, and after seeing it, he attempted to cross the track in front of the locomotive. To the 27th they say, he did not know that the train was near enough to the place where he attempted to cross, to run on him while crossing, before he started to cross the track. To the 28th they say, if he had stopped to look out in the direction that the train was coming, just before entering upon the defendant's right of way

and track, he could have seen the train. To the 29th and 30th they say that he did not, through want of ordinary care, prudence and diligence, contribute to the injury, and that he was not in fault in not avoiding the accident, or in running upon the track in the manner he did, under all the evidence.

Now there can be no inconsistency in these answers unless we can say as a matter of law, upon the evidence, that it was under all the circumstances the duty of the deceased, in the exercise of ordinary prudence, to have stopped before crossing the track, or that under the evidence he ought to have known it was hazardous and rash to attempt to cross in front of the approaching train. As I have said above, upon the evidence, I am very clear that these questions were questions of fact for the jury. I do not think that the evidence shows that the deceased thought there was any danger in attempting to cross. The evidence, in my estimation, clearly shows that when he heard the whistle of the approaching train, and started to cross the track, he was guilty of no rashness or negligence. He had the right to suppose there could be no doubt as to his ability to run 260 feet while the train was running 2,640 feet, at any rate of speed he was called upon to believe the train would run; and the proof shows that if the train had run at the speed he had the right to believe it would run, and at which under the circumstances it ought to have run, he would have passed the point of danger one-quarter of a mile ahead of the train; and having every reason for believing he would cross the track far ahead of the train, he was not, perhaps, called upon to exercise any extraordinary care in approaching the track, and was not called upon to stop and make further investigation as to the whereabouts of the engine before attempting to cross. The answer of the jury that he saw the train and heard its noise before attempting to cross in front thereof, does not show, as a matter of law, that he was culpable in making the attempt.

When he came within twenty feet of the track, there was

nothing to obstruct his view of the train; he probably saw it then and heard its noise. The jury supposed he did, though there is no evidence of the fact except the strong probabilities of the case; but the evidence also shows that there was no hesitation on the part of the deceased. If he saw the approaching train, as he probably did, when within twenty feet of the crossing, he saw it at a distance of over two hundred feet from him; and, seeing it at that distance, and supposing it was running at the speed it ought to have been running, I cannot say, as a matter of law, that it was a want of ordinary care in him that he did not stop. It is urged that when he saw the train so much nearer than he had expected it would be, he ought to have instantly come to the conclusion that it was running much faster than he had anticipated, and therefore should have stopped. I suppose it would be difficult to tell how fast a train was approaching by a momentary glance at it, as it was approaching the observer. The deceased might have thought that, although it had approached much faster than he anticipated, yet it would slow as it approached the station, and therefore it was safe to pass. Unless we are prepared to say, as a matter of law, that it is a want of ordinary care for a young and active man to attempt to cross a railroad track, starting rapidly from a point not more than twenty feet distant from the same, when an approaching train is at least two hundred feet from the point of crossing, the train going not more than twenty miles per hour, then we cannot say, under all the evidence in the case, that, as a matter of law, the deceased was guilty of contributory negligence. That the train in this case was going at more than twice that speed, in fact, was not the fault of the deceased, nor does the evidence show that he knew the fact; and that circumstance should not, therefore, be considered in determining the question of his negligence, as a matter of law, although it might be considered in determining it as a question of fact.

In my opinion the special verdict is not inconsistent with

itself, and the judgment of the circuit court should be affirmed.

*By the Court.* — The judgment is reversed, and a new trial ordered.