McBride v. Union Pac. Ry. Co.

---

McBRIDE v. UNION PAC. RY. CO.

(February 1, 1889.)

MASTER AND SERVANT — VICE-PRINCIPAL — FINDINGS.

1. Plaintiff had been ordered by the "gang boss" to assist in lowering an engine in defendant's shops. The engine was hoisted above the track, and was resting on timbers, which in turn were resting on the rails and above a pit two or three feet deep. In removing the last timber but three men were employed, plaintiff being on the right-hand side, and J. and E. on the left. By order of the "boss," J. left the work, and the end of the timber held by E. dropped into the pit, causing the other end to fly up and hit plaintiff, inflicting the injuries complained of. The jury found that the "gang boss" had immediate control of the work, but that he was under the general control of the master mechanic; that the latter was not in the

shops at the time, but that the foreman, who superintended the work in the shops under the general directions of the master mechanic, was present. *Held*, that the defendant could not be held liable for the negligence of the "gang boss" as a vice-principal in exclusive control of a department.[1]

2. The jury found that in consequence of an order given by the "boss," J. did not assist in removing the last timber from under the engine, and that in consequence of his failure so to assist the accident occurred, and to that extent the "boss" and J. were found negligent. They also found that three men were generally employed to do the work referred to, though two, one being in the pit, could do the work. *Held*, that the findings were inconsistent.

3. The finding that two men were sufficient, and that two were furnished, does not warrant a judgment for defendant, it being inconsistent with the finding that the accident occurred in consequence of the third man being ordered away; and to strike out the latter and give effect to the former would be making a new verdict.

SAUFLEY, J., dissenting.

Error from district court.

Action for personal injuries by John McBride against the Union Pacific Railway Company. Defendant had judgment, and, on the refusal of the court to grant a new trial, plaintiff brings error. Reversed.

*A. C. Campbell* and *W. R. Stoll*, for plaintiff in error. *W. W. Corlett* and *J. A. Riner*, for defendant in error.

CORN, J. Plaintiff in error brought suit against the defendant in error in the district court of the First judicial district, to recover $25,000 damages for personal injuries received by reason of the negligence of the defendant, plaintiff being in defendant's employ at the time the injuries were received. The evidence tends to show that Harry Stubbs, who is described as a "gang boss," on the day the injuries were received took the plaintiff and found other employés of defendant and put over an engine. The engine, having been run into the shop for repairs, had been hoisted above the track, and was resting upon heavy timbers, the timbers resting upon the rails and above a pit dug under the track, two or three feet deep. All the timbers had been taken from under the engine but one, and Stubbs had previously ordered two of the men away. Plaintiff by order of Stubbs was on the right-hand side of the engine, and the

---

[1] See note at end of case.

McBride v. Union Pac. Ry. Co.

two remaining employés were on the other side. While the last timber was being removed Stubbs ordered one of the two remaining employés away, leaving but one, John Estes, holding the timber on the left-hand side. Immediately afterwards the end of the timber held by Estes dropped into the pit, causing the end held by plaintiff to fly up and strike him under the chin, forcing his head violently against the driving rod and inflicting upon him a serious and permanent injury. A special verdict was rendered in the case, and the foregoing statement of the facts, while incomplete when taken in connection with the special verdict, will be sufficient for the decision of the case. The verdict of the jury was as follows: "We, the jury in the above-entitled cause, do upon our oaths say as to the first cause of action as follows: (1) That the plaintiff, John McBride, was injured at the shops of the defendant, in Cheyenne, on the 27th of November, 1883, and that the injuries there and then received were serious and permanent. (2) That one Harry Stubbs was at the time above mentioned a 'gang boss' in the employ of the defendant, and as such 'gang boss' had immediate control of the men working in the shops of the defendant; he himself being under the general orders of the master mechanic. (3) That said Harry Stubbs had charge of the men engaged in lowering the engine and removing the timbers from under said engine on the day of the accident. (4) That one James Butler, foreman in the employ of the defendant, was present at the said shops on the day of the accident. That the duty of a foreman of the shops was to superintend the work in said shops under general directions of the master mechanic. (5) That one R. McDougal, master mechanic in the employ of the defendant, was not present at the shops at the time of the accident. (6) That three men were generally employed to remove the timbers referred to, although two men,—one of them being in the pit under the engine,— could do the work safely. (7) That on the day of the accident, and at the time of the removal of the last timber from under said engine, three were employed in said removal; the plaintiff on the right-hand side of the engine, and Louis Jacobson and John Estes or 'Monohan' on the left-hand side. (8) That in consequence of an order given by said Harry Stubbs the said Louis Jacobson did not assist in removing the last timber from under said engine, and that in consequence of his failure so to assist the accident occurred, and to that extent we find Harry Stubbs negligent. We also find Louis Jacobson negligent. (9) That the plaintiff was performing his duties with ordinary caution. (10) That the said timber was between seven and eight feet long, weighed about 180 pounds. That the end of said timber farthest from the plaintiff fell into the pit under said engine, causing the other end to fly up and to cause the injuries to the plaintiff. (11) That if on the facts the finding should be for the plaintiff, we find for the plaintiff, and assess his damages at the sum of twenty-five thousand dollars, ($25,000.) If on the facts the finding should be for the defendant, we find for the defendant. We find for the defendant on the second cause of action." No error is assigned on the finding of the jury or the judgment of the court below upon the second cause of action. On the 2d day of July, 1886, the plaintiff moved for judgment in his favor upon the verdict. Subsequently, on the 17th day of July, 1886, the plaintiff entered his motion to vacate the verdict, and for a new trial. July 19th the court overruled both motions. On the same day the plaintiff again moved a new trial, assigning, among other grounds, that the court erred in rendering judgment for the defendant upon the verdict.

The questions we are called upon to decide are whether the court erred in refusing to grant a new trial upon the motion of plaintiff, and whether the court erred in refusing to render judgment in favor of plaintiff and rendering judgment in favor of defendant upon the special verdict. If the plaintiff is entitled to judgment upon the findings of the jury it is upon the principle that Harry Stubbs was not, in contemplation of law, a fellow-servant of the plaintiff, but was a vice-principal standing in the place of the defendant, by reason of being placed by the defendant in control of a separate matter or department; or that, not being in control of a separate department, he yet was the representative of the common employer, by being placed in charge of the performance of duties upon which depended the safety of the men, and which the employer could not shift by dele-

McBride v. Union Pac. Ry. Co.

gating them to a subordinate. Under the facts as found by the jury it is clear that the defendant cannot be held liable for the negligence of Stubbs as a vice-principal in exclusive control of a department. The finding makes it evident that the control of the shops was in the master mechanic, under whose general orders Stubbs had immediate control of the men; that while the master mechanic was not present on the day of the accident, James Butler, the foreman, was present and his duty was to superintend the work in the shops under general directions of the master mechanic. None of the authorities, we believe, go to the length of holding the master liable for the negligence of an employé as vice-principal in control of a department, when there is in the same department, and present at the time of the accident, a superior under whose orders and control such employé performs his duties. There is, however, a class of cases where the employé is the representative of the master, though not in control of a separate department; and where the master is liable for his negligence, not upon any ground of superior rank or grade in the service, but from the character of the service which he is designated to perform. "One of the exceptions to the general rule of the common law that the master is not liable to one employé for the negligence of a co-employé in the same service, arises from the obligation of the master, whether a natural person or a corporate body, not to expose the servant, when conducting the master's business, to perils or hazards against which he may be guarded by proper diligence upon the part of the master." Railroad Co. v. Fox, 31 Kan. 597, 3 Pac. Rep. 320. Such proper diligence imposes upon the master such duties as to furnish to the men a reasonably safe place in which to work, to furnish them proper and safe machinery and materials with which to work, to exercise reasonable care and diligence in making sufficient regulations for the safe running of trains, so as to avoid injury from collisions, etc., to furnish sufficiently skillful co-employés, and in sufficient number for the safe performance of any particular piece of work in which an employé is called upon to take part, etc.

This brings us to a consideration of the facts as found in the special verdict. The eighth finding recites: "That in consequence of an order given by said Harry Stubbs, the said Louis Jacobson did not assist in removing the last timber from under said engine, and that in consequence of his failure so to assist the accident occurred, and to that extent we find Harry Stubbs negligent. We also find Louis Jacobson negligent." This is the only finding which imputes negligence to any one connected with the work in hand; and we think it clear, if the plaintiff can recover at all, it must be upon the ground that Stubbs, exercising the duties of the master in this regard, by his order left an insufficient number of men to do the work safely, and thereby the accident occurred. It cannot be maintained that by the order taking Jacobson away from the work some surprise or confusion among the remaining employés was occasioned, and that the accident thereby occurred, although sufficient force remained to do the work if properly applied. If the finding means that, then the plaintiff cannot recover, for in directing and assisting in the work merely Stubbs is a fellow-servant, and not the representative of the master. Moreover, the jury in terms find that in consequence of Jacobson's failure to assist the accident occurred. But by the sixth clause of the verdict the jury find "that three men were generally employed to remove the timbers referred to, although two men—one of them being in the pit under the engine—could do the work." The two findings are inconsistent with each other. The jury finds two men sufficient to do the work safely, and it clearly appears from the verdict that two men—the plaintiff and John Estes—were left to do the work, and yet they find that the accident occurred by reason of the failure of a third man to assist. It may be suggested that in order for two men to do the work safely one of them must have been in the pit under the engine. It may be that this is a legitimate inference from the language of the sixth finding. But, upon the other hand, the jury do not find that one of the men was not in the pit, unless it be conjectured from the language used in the seventh finding. And in any event it would only illustrate the negligence or care with which the work was performed; and in this respect Stubbs does not represent the master, but stands in the attitude of a fellow-servant only.

McBride v. Union Pac. Ry. Co.

Again, it may be urged upon the other hand that if, as this court believes, there is nothing in the verdict indicating any basis for a recovery by plaintiff except the furnishing of an insufficient number of men for the work, then the finding of the jury that two men were sufficient, and that two men were supplied, would warrant a judgment for the defendant, notwithstanding the further finding that the accident occurred in consequence of a third man being ordered away from the work, and failing to assist. We do not think so. It is true that special findings of fact will control a general finding. But here are inconsistent clauses of the verdict, each being a finding of fact. To strike out one and give effect to the other would be to make a new verdict, which the court has no power to do. Neither are we at liberty to go behind the findings, and resort to the evidence to sustain the verdict, for the effect would be the same. Where the special findings are materially inconsistent, the judgment must be reversed, and a new trial granted. Haas v. Railroad Co., 41 Wis. 44; Kearney v. Railroad Co., 47 Wis. 144, 2 N. W. Rep. 82; Burns v. Rolling-Mill Co., 60 Wis. 541, 19 N. W. Rep. 380; Hill v. Covell, 1 N. Y. 522; Manning v. Monaghan, 23 N. Y. 539; Walsh v. Bank, 10 Civil Proc. R. 32. As a new trial will be ordered, we intimate no opinion upon the question whether the plaintiff would, in any view of the evidence as presented in this record, be entitled to recover. Judgment reversed, and new trial ordered.

SAUFLEY, J., (*dissenting.*) At the last term of this court, and before this cause stood regularly for hearing upon its merits, the defendant in error submitted to the court a motion to dismiss the petition upon the ground that the paper purporting to be a bill of exceptions, and which is attached only to the petition in error, was allowed and signed by the judge of the trial court in vacation, and that the record nowhere outside the alleged bill shows that a bill was allowed. On the hearing of that motion the majority of the court overruled it. 18 Pac. Rep. 635.[1] Differing at that time from my associates in their conclusion of law, I was constrained

to dissent, but omitted to present in writing the reasons for my contrary opinion. The cause has at this term of the court come on for final hearing, and the defendant, in argument, raises the same point embodied in its motion as a reason why the judgment of the court below should be affirmed. According to the view which I take of the record, the judgment below can be, in terms, neither affirmed nor reversed. This court is powerless to enter any order in the case, except to dismiss the proceeding in error for the want of a bill of exceptions. That the paper purporting to be a bill is not one in any legal or proper sense, I cannot doubt. Under the Civil Code of Wyoming, I hold—*First*, that the judge of a district court has no authority to either allow or to sign a bill of exceptions in vacation, and, *second*, that a bill of exceptions, though in fact allowed and signed by the judge of the court, cannot be considered by this court, unless the record of the court below, independently of any recital of the bill, shows that it was so allowed and signed. Section 2646 reads: "The party objecting to the decision must except at the time the decision is made, and time may be given to reduce the exception to writing, but not beyond the first day of the next succeeding term." Section 2649: "When the decision is not entered on the record * * * the party excepting must reduce his exception to writing, and present it to the court for allowance. If true, it shall be the duty of the majority of the judges composing the court, or of the judge or court before whom the case was or is being tried, to allow and sign it, whereupon it shall be filed with the pleadings as a part of the record, but not spread at large upon the journal. If the writing is not true, the court shall correct it, or suggest the correction to be made, and it shall then be signed as aforesaid." The opinion of the majority of the court upon the motion to dismiss was based chiefly upon so much of this section ("read in the light of its prototype from Ohio") as states that it shall become the duty of the judge or court to allow and sign the bill. From a careful reading of sections 5301, 5302, of the Ohio Code I am unable to perceive that, considered collectively, they constitute a prototype to so much of the Wyoming statutes as is herein submitted for construction, even so much as do the princi-

---

[1] *Ante*, 183.

ples of the statute, (Westminster II.,) which originally gave the bill of exceptions. These principles have been adopted into the practice of most of the states of the Union, besides approved by the supreme court of the United States. Under that statute the court have informally held that the exceptions should be taken or reduced to writing at the trial; not that they should be formally drawn and signed before the trial is at an end, but that during the term they should be reduced to form, and allowed and signed during the term by the judge for authentication. 2 Bac. Abr. tit. "Bill of Exceptions;" Sheppard v. Wilson, 6 How. 260. The rule requiring the exception to be reduced to writing during the term has been modified by the legislation of several states to the extent that the party excepting may have until a specified time to formally prepare his bill. But otherwise, in its essential features, the Westminster statute, as interpreted and applied by the supreme court of the United States, remains the prototype of the practice in at least many of the states, as it is of the Wyoming statute. The Ohio Code is expressly and materially different in certain respects. In section 5301 (Ohio) it is provided that "the party excepting must reduce his exception to writing, and present the same to the trial judge or judges for allowance within 30 days from the end of the term at which the verdict is rendered." If the trial judge is absent when the exception is prepared, it may be deposited with the clerk of his court, and thereafter "the judge shall sign it on or before the first day of the next ensuing term of the court." These points of difference between the legislation of Ohio and Wyoming are so marked that, in this respect, the one can scarcely be considered the prototype of the other; but if the model after which the Wyoming Code is fashioned is to be found in section 5302, Ohio Code, and which, as the majority of the court say, "was evidently intended to serve the purpose" which section 2649 of the Wyoming Code does, it then impresses itself upon my view that the concluding paragraph of section 5302 should be given its proper force in the interpretation of the Wyoming statute. That paragraph reads thus: "If the bill is to be signed after the term, the journal must be kept open, and the allowance and signing thereof entered there-on as of the term." From this I understand that, while the trial judge may affix, for the purpose of authentication, his sign-manual to the bill in vacation, it is wholly inoperative or ineffectual to present to the court of revisory jurisdiction the proceedings of the court below, unless the allowance and signing are on the journal. It is thus that a bill of exceptions is made a matter of court procedure, as contradistinguished from a procedure before a judge in vacation, and it is thus that the Ohio Code has preserved its homogeneity with that system of practice which is not only politic in itself, but which has the sanction of ancient rules and precedents. The majority of the court summarily dispose of this concluding paragraph and the argument thereon, by saying: "Our statute contains no such provision." This is true; there is no such provision. But it must be kept in mind that the argument of the court, in favor of the allowance and signing of the bill in vacation, was made partly on the assumption that the Ohio section which contains this provision is the prototype of our statute.

Now, the only point intended to be made is that the argument should be carried to its logical sequence. I contend that it is worse than inconsequential to affirm that one statute is the prototype of another in respect of those matters of which the one speaks and the other is silent; but, if so be that despite those differences one must be accepted as the pattern of the other, then the pattern must be made to apply to all points of difference. The Wyoming Code is something more than an adoption of the Ohio Code. Its various provisions, with but few exceptions, are a transcript of the latter. And this fact of itself lends force to the proposition that a judge cannot, out of term, allow and sign a bill of exceptions. By the Ohio Code, and by the identical sections which are cited as the prototype, this power is expressly conferred. In the Wyoming Code there is no such express delegation of authority. It can be maintained only by an interpretation, which I must conclude is not in harmony with the context. While the rule that statutes in derogation of the common law shall be strictly construed has been abolished in this territory, it is nevertheless a conservative proposition that when a common-law

procedure or a precedence in the court of common law has prevailed for centuries the statute which abrogates it should be so plainly expressed that nothing is left to disputable inference. Let us, therefore, carefully examine section 2649, Wyoming Code, and determine the mooted question. The clause which first invites attention reads thus: "The party excepting must first reduce his exception to writing and present it to the court for allowance." So far this would seem conclusive against the authority of the judge in vacation. But it is held that the next clause extends the limitation, and confers upon the judge out of term equal power with the judge during the term. "If true it shall be the duty * * * of the judge or court before whom the case was or is being tried, to allow and sign it." The use, disjunctively, of the words "judge" and "court," it is thought fully sustains this view. This, however, leaves out of consideration another paragraph of the same section, which expressly confirms to the "court" judicial action on the bill, thus: "If the writing is not true, the court shall cancel it, or suggest the correction to be made, and it shall then be signed as aforesaid." If the bill is presented for allowance and signature in the vacation of the court, how is it possible for the court to determine whether it be true or false? This duty of determination is not devolved upon the judge in vacation, and the exercise of that duty is plainly a precedent condition to the signing of the bill. So it is that by considering the section in its entirety, rather than in segregated paragraphs, a conclusion is reached which gives effect to it as a whole, and avoids the difficulties and contradictions involved in the opposite interpretations. Considering that these embarrassments necessarily arise from that interpretation, it is fairly to be presumed that the legislature, in the use, disjunctively, of the words "judge" and "court," simply intended to present an alternative of terms implying the same thing, instead of that particular form of alternative which offers a choice of the one thing or the other. Just as, in common speech, we say that a certain instrument is a "deed" or "conveyance," a certain pleading, a "petition" or "declaration," or, as in section 3225, where it is obvious that the word "judge" is used synonymously with

"court." The grand jury shall be charged by the judge, and, in the same section "after the charge by the court, the grand jury shall retire." Or, as in section 2553, "the court shall give such instructions upon the law to the jury as may be necessary, which instructions shall be in writing, and numbered and signed by the judge." Now, it is certainly unquestioned that the judge in vacation cannot charge the grand jury, and equally so that the judge in vacation cannot number and sign the instructions. It is well understood, even by those who make no pretense to attainments in philology, that in certain connections words may coincide, and so be interchanged, when they cannot be interchanged in other connections. In harmony with this familiar canon, and impressed by the necessity of giving effect to the entire section, I conclude that the words "judge" and "court," as they appear in section 2649, are the precise equivalents of each other,— identical in use and meaning.

By further examinations of the statutes it will be ascertained that when the legislature intended that a power or duty should be devolved upon the judge as distinguished from the court, apt words are used to express that legislative intent. Thus, in section 2573, "all issues, by consent of parties, may be refused by the court, or by a judge thereof in vacation." "Sec. 2574. When the parties do not consent, the court, or the judge thereof in vacation, may refer the issues when the parties are not entitled to trial by jury." "Sec. 2887. The court, or the judge thereof in vacation, may appoint a receiver." "Sec. 2892. The court, or a judge thereof in vacation, may make proper orders for the preservation of property." "Sec. 2913. The attachment may be granted by the court in which the action is brought, or by the judge thereof." "Sec. 2921. The injunction may be granted at the time of commencing the action, by the district court, or by a judge thereof." "Sec. 2932. A party may apply to the court in which an action is pending, or to a judge thereof, or to the supreme court, or to a judge thereof, to vacate or modify an injunction." "Sec. 3136, subsec. 2. The undertaking shall be in such sum as may be prescribed by a court of record, or by a judge thereof." "Sec. 3068. The court, or a judge thereof, may make an order for the examina-

McBride v. Union Pac. Ry. Co.

tion of witnesses *de bene esse.*" These several sections, taken at random, omitting others equally illustrative, sufficiently prove the proposition previously submitted, that when the legislature designed to confer a power or discretion upon a judge in vacation, words appropriate to that end, and of no doubtful import, are habitually employed. Moreover, there seems to me to be a peculiar fitness in requiring that such judicial action as may be had in the allowance of the bill should be by the court. The exception is a part of the trial. While it may formally be drawn up after the trial is over, it must be taken at the time the adverse ruling is made by the court, after it is prepared and tendered for allowance. The same tribunal, the same incorporeal, political being which made the ruling, should adjudicate the questions arising on the motion for allowance. To allow, carries with it the idea of determination; to determine, to decide whether the ruling recited in the bill was made; whether the testimony narrated is correctly rehearsed; whether the instructions embodied (if verbal) were given; whether the exception presented was reserved. It presupposes adjudication, in the same sense that is implied in an order which recites that "the court allows a motion," or "the court allows a claim." The signature of the judge is one of the evidences of allowance; or perhaps, more accurately speaking, an attestation that the writing which precedes it is true. However metaphysical or even fanciful these reflections may be, and therefore illy adapted to the practical aims of the law, I cannot believe that the practice of signing and allowing bills of exceptions in vacation is founded in a wise policy. The reasons of policy which forbid it do not apply to those orders which the judge is permitted by law to make in vacation. As a rule such orders can be made only on notice to the opposite party, or, if made without notice, they are provisional and take effect only upon the execution of a bond of indemnity. It is not required by law that the party excepting shall give to his adversary notice of the exact time at which he will tender his bill. For this reason the tender and motion for allowance, and the allowance itself, should be in open court, at the place which is designated by law for the court to be holden. That place every attorney knows, and the public know it. The attorney's professional duties require him to be there, and he thus has a fair opportunity offered him to be heard against the bill, if objectionable. The experience of every lawyer has taught him that often his client's highest interests depend more upon the vigilance of his attorney in scrutinizing a tendered bill than in guarding his rights during the trial. It is idle to say that the judge is honest and will not allow errors to creep into the bill. The judge is no less fallible than the balance of mankind. His memory may be at fault, and is, in fact, more at fault than the memory of the attorney who conducts the trial of the cause. It surely follows that if he is permitted by law to allow and sign in vacation, then he may do so at any place within his district, at the court house, at his residence, at an hotel, on the road, in the cars, or in a coal mine. His power is limited only by the imaginary lines of his circuit, and the extent of his vacation. There is absolutely no other restriction. At midday or at midnight, at his meals or on his couch, at church or at the theater, in his office or on his ranch, on the hustings or in the caucus, he may exercise the functions of his exalted station, regardless of environments. To affirm that the legislature ever intended that these things should become possible, solicits our assent to a proposition which imputes to a co-ordinate branch of the government what seems to me to be a disregard of the interests it assembled to conserve.

Entertaining these views, the only proper judgment which I conceive the court can render is to dismiss the petition in error; but since it is held that the record is properly here, I deem it at least not foreign to my duty to express an opinion upon the merits of the cause. Here, again, I am reluctantly enough compelled to differ from my associates. It may be accepted as a correct principle that when the special findings of a jury are inconsistent with each other the court should award a new trial. The philosophy of this is easily discernible. Inconsistent findings neutralize each other, and therefore leave nothing on which the court can render judgment. But this rule cannot, as I think, either on principle or authority, be said to have universal application. If

McBride v. Union Pac. Ry. Co.

there be other findings which are not affected by the conflict between those which are inconsistent, and which of themselves and by their own force are sufficient to constrain a judgment the one way or the other, then it occurs to me that the reason of the rule ceases. It may be true that in the case at bar there is an inconsistency between the sixth and the eighth paragraphs of the special verdict, but those findings relate wholly to the question of negligence. The controlling factor in this case, and that which precedes all other questions, is, was Stubbs the "gang boss," a fellow-servant of McBride, or was he the representative of the defendant corporation? If the former relation between them existed, it is profitless to investigate further. As between fellow-servants in the same line of service each one is the agent of the other, agreeing to risk the contingencies produced by the neglect of any one of them, and neither is the agent of the master. It was found by the jury that Butler was the foreman in the employ of the defendant, that he was present at the shop on the day of the accident, and that he was subject to the general direction of the master mechanic, who was absent, in superintendence of the work in which McBride was engaged at the time of his injury. On this finding, I conclude that Butler was the *alter ego*, or the vice-principal, and that only his acts or omissions can make the master responsible under the doctrine of *respondeat superior*. The mere fact as found by the jury that Stubbs, as "gang boss," had "immediate control of the men working in the shops," cannot, in the light of any adjudications to which my attention has been directed, nor in the light of the understanding common to those who have observed such work, be said to invest him with that extended authority necessary to fix his *status* as a vice-principal. · To say that he had immediate control may in a limited sense imply subordination on the part of those who worked in his gang. But the subordination, as here understood, is not sufficient. There must be, according to my understanding of the weight of authority, a control in its nature and distinctive features departmental. The conductor of a train, it is said, has a control of this character. In the moving and management of his train his authority is as

nearly supreme as that which is exercised by any one who is himself a subordinate. Beneath him in the grade of service are the engineer and brakeman, and, if either one of them is injured by his negligence, the superior is responsible. No such departmental control or extended authority can be said to have been delegated to Stubbs. The master mechanic had the general superintendence of the shops. In his absence Butler, the foreman, was the representative of the common employer. In the constitution of a corporation charged with the conduct or management of multitudinous interests necessity demands that there should be a division of its powers and duties confided to several departments. Each department represents a unit of the organization. It is presided over by one who may be called the chief, who, in his own sphere of authority, is the visible representative of the invisible master. In him the power of control is given. Through him authority is exercised. He is the accredited agent of the principal. For his negligence alone can the principal be held responsible. To carry the doctrine of agency further would be not only to advance the law beyond all known borders, but would establish responsibilities dangerous to the exercise of the most efficient means of commerce. Being thus profoundly convicted that Stubbs, as shown by the verdict, was but a fellow-servant with the person so painfully and so unfortunately injured, the maxim of *qui facit per alium* is wholly inapplicable. In this view it is immaterial whether Stubbs was negligent or not, or, if he were, in what degree, and therefore equally immaterial whether the findings of the jury on this issue were consistent or otherwise. All ulterior inquiry is precluded by the finding that the master mechanic or the foreman had departmental control. I am therefore of the opinion that if the case were properly here the judgment of the district court should be affirmed.

NOTE.

VICE PRINCIPALS—LIABILITY OF MASTER.

To constitute one vice principal or superior servant the master must have committed to him the virtual and substantial control of the business, and the power to do all acts necessary to its conduct, Willis v. Navigation Co., (Or.) 4 Pac. Rep. 121; or is charged with providing and maintaining in good repair the machinery to be

used by the workmen, Gilmore v. Railway Co., 18 Fed. Rep. 866.

The employer is liable for the negligence of a superior servant whose orders the injured servant is required to obey, which causes injury to another employe, even though he be in the same general line of employment. Schultz v. Railroad Co., (Wis.) 4 N. W. Rep. 399; Stone Co. v. Kraft, 31 Ohio St. 287; Railroad Co. v. Stevens, 20 Ohio, 415; Railroad Co. v. Keary, 3 Ohio St. 201; Railroad Co. v. Barber, 5 Ohio St. 541; Whaalan v. Railroad Co., 8 Ohio St. 249; Railway Co. v. Devinney, 17 Ohio St. 197; Cowles v. Railroad Co., 84 N. C. 309; Railroad Co. v. Delahunty, 53 Tex. 206; McCosker v. Railroad Co., 12 Reporter, 278; Railway Co. v. Lavalley, Id. 374; Shear. & R. Neg. § 96; Whart. Neg. § 205. And the injured servant is not guilty of such contributory negligence as may be regarded as the proximate cause of the injury. Farmer v. Railway Co., 24 N. W. Rep. 895. A contrary doctrine is maintained in some cases, see Laning v. Railroad Co., 49 N. Y. 521; Peterson v. Mining Co., 50 Iowa, 673; Railroad Co. v. Murphy, 53 Ill. 336; Lawler v. Railroad Co., 62 Me. 463; even where such such superior servant is a foreman or superintendent, Malone v. Hathaway, 64 N. Y. 5; Brothers v. Cartter, 52 Mo. 372; Lewis v. Railroad Co., 59 Mo. 495; Wilson v. Merry, 1 H. L. Sc. App. 326; Wigmore v. Jay, 5 Exch. 354; unless the employer have knowledge of the incompetency of the servant complained of, Blake v. Railroad Co., 70 Me. 60; Colton v. Richards, 123 Mass. 484; Cummings v. Railway Co.,2 Hask.101; or unless he was originally at fault in the selection of such negligent servant. McDonald v. Hazletine, 53 Cal. 35.

The court say, in the case of State v. Malster, 12 Reporter, 783, that to the general rule of non-responsibility there is this qualification or exception, to wit: That where the superintendent or overseer and directing servant is intrusted with the discharge of the duties incumbent upon the master, as between him and his general servants, then the master may be held responsible for the omission of the manager or superintendent in respect to those duties intrusted to him which the master is bound to perform; and there are other cases holding to the same effect. Murphy v. Smith, 19 C. B. (N. S.) 361; Malone v. Hathaway, 64 N. Y. 5; Moran's Case, 44 Md. 283; Whart. Neg. § 229. Irving Browne makes two exceptions, and draws the distinctions to a nice shade, (Browne, Dom. Rel. 132:) *First*, in the case of corporations, where the delegation of authority to agents, of different grades of authority and responsibility is a matter of necessity, the corporation being unable to act except through agents, and as such agents occupy the place of a master, the corporation is said to be present in these agents, and consequently liable for the manner in which they perform their duties, Flike v. Railroad Co., 53 N. Y. 549; Dobbin v. Railroad Co., 81 N. C. 446; and, *second*, where a master delegates his powers and authority over the work and the employes, including the power of selecting and discharging employes, purchasing and repairing machinery, and constitutes him, as Browne terms it, the *alter ego*, Corcoran v. Holbrook, 59 N. Y. 517; Mullan v. Steamship Co., 78 Pa. St. 25; Mitchell v. Robinson, 80 Ind. 281; because in such a case the negligence, as well as the knowledge and notification of the agent, is attributable to the master. Patterson v. Railroad Co., 76 Pa. St. 389; Ford v. Railroad Co., 110 Mass. 240. In the much-discussed case of Railway Co. v. Ross, 5 Sup. Ct. Rep. 184, it was held by the supreme court of the United States (by a divided court) that the conductor of a railway train is the representative of the company, standing in its place and stead in the running of the train, and holding the company liable for an injury occasioned by the negligence of such conductor to an engineer on the train.

In Kain v. Smith, 3 Ohio Law J. 154, the New York court of appeals held that the master is liable for injuries caused by defects in machinery or apparatus which should have been discovered and remedied by the master mechanic or foreman, when such defects caused the injury complained of. It has been held in Missouri (Marshall v. Schricker, 63 Mo. 309,) that "the employer cannot be charged with negligence of one who was merely a foreman over the plaintiff, not engaged in a distinct part of the general service, but in the same work with the plaintiff, and not charged with any executive duties or control over plaintiff which would constitute him the agent of the employer." This is a place where Browne's *alter ego* doctrine comes into play; but, according to the writer's way of viewing the question, this is not in accord with the current of the decisions and the weight of authority. The weight of authority, at least in the more recent cases, is to the effect that, no matter whether the foreman or superior servant is vested with "executive powers" or not, if an inferior employe is required to obey the directions of such superior servant or foreman in charge, he is not a fellow workman within the rule, and the common master will be liable in damages for any negligence on the part of such superior servant or foreman in charge, which results in injury to an inferior servant or employe; and particularly when such inferior servant or employe is injured while attempting to perform an act directed by such foreman or superior servant. Dowling v. Allen, 74 Mo. 13. It may be laid down as a general rule that a master is liable for all injuries caused by the negligence of a fellow servant, when such fellow servant is empowered with superior authority and may direct the inferior. Cowles v. Railroad Co., 84 N. C. 309; Railway Co. v. Lavalley, 36 Ohio St. 221. Thus, in the case of McCosker v. Railroad Co., 10 Reporter, 608, the New York court of appeals held that a yard master of a railway company, who had charge of the making up of trains, and the power to employ and discharge subordinates, stands in the place of the company *pro hac vice*. And there are a number of cases to the same effect. See Laning v. Railroad Co., 49 N. Y. 521; Brickner v. Railroad Co., Id. 672; Flike v. Railroad Co., 53 N. Y. 549; Malone v. Hathaway, 64 N. Y. 5; Besel v. Railroad Co., 70 N. Y. 171; Fort v. Whipple, 11 Hun, 586; Eagan v. Tucker, 18 Hun,

## McBride v. Union Pac. Ry. Co.

347; Mullon v. Steamship Co., 78 Pa. St. 26; Railway Co. v. Lewis, 33 Ohio St. 196; Dobbin v. Railroad Co., 81 N. C. 446; The Clatsop Chief, 7 Sawy. 274, 8 Fed. Rep. 163. In the case of The Clatsop Chief it is said: "The deceased was merely the fireman of the Clatsop Chief, and, as such, subject to the orders of the master. He was an inferior servant, injured by the misconduct of a superior one, for which injury there is much authority and more reason for holding the common employer liable." This is manifestly the only just and equitable doctrine. It may be a breaking away from the rigorous and inequitable rules of the English common law, and from the former doctrine in this country; see Buckley v. Mining Co., 14 Fed. Rep. 833, and note, 840; but the tide seems to be now fully set in the direction of justice and humanity, and the poor laborer, who, under the old rule, was left to be driven about by the winds of chance, stranded upon the shoals of misfortune, or wrecked upon the rocks of adversity, will be better protected in his person and his rights in the future. Packet Co. v. McCue, 17 Wall. 513; Railroad Co. v. Fort, Id. 557; Stone Co. v. Kraft, 31 Ohio St. 289; Railroad Co. v. Moranda, 93 Ill. 302; Devany v. Iron Works, 4 Mo. App. 236; Gormly v. Iron Works, 61 Mo. 492; The Chandos, 6 Sawy. 548, 4 Fed. Rep. 645.

The night foreman of a mine, who has entire charge during the nighttime, with power to order and direct the miners, is a vice principal, though he is subject to the general directions of the day foreman. Coal Co. v. Wombacher, 31 Ill. App. 288, affirmed in 24 N. E. Rep. 627.

A foreman intrusted by the master with control of the work in which a servant is engaged, and with authority to direct him how, when, and where it shall be done, is a vice principal. Cox v. Granite Co., 39 Mo. App. 424.

When a master delegates to its foreman the power to select men to do the work and to superintend it, the foreman is a vice principal. McElligott v. Randolph, (Conn.) 22 Atl. Rep. 1094.

A railroad foreman, having full charge of the loading of cars in a gravel pit, with power to hire and discharge laborers, and to direct their work, is a vice principal. Andreson v. Depot Co., (Utah,) 30 Pac. Rep. 305.

One who has full control of another's timber-yard, and employs and discharges men, is a vice principal, and the person on whom the care and management of the yard devolves in his absence is a temporary vice principal. Baldwin v. Railway Co., (Iowa,) 39 N. W. Rep. 507.

As regards the obligation of a railroad company to its trainmen to keep its road in safe condition, a road master or section boss, to whom such duty is delegated, is a vice-principal. Railway Co. v. Weaver, (Kan.) 11 Pac. Rep. 408.

A section foreman is not a fellow servant of the sectionmen under his orders, in respect to his performance of the master's duty of directing the work in his charge. Schroeder v. Railway Co., (Mo. Sup.) 18 S. W. Rep. 1094; but see Spancake v. Railroad Co., (Pa. Sup.) 23 Atl. Rep. 1006; Justice v. Pennsylvania Co., (Ind. Sup.) 30 N. E. Rep. 303.

A person to whom a master delegates the duty of furnishing his servants with a reasonably safe place at which to work, and with reasonably safe instruments or tools, is a vice principal. Kelley v. Ryus, (Kan.) 29 Pac. Rep. 144.

So is a person whom a master places in entire charge of his business, or a distinct branch of it. Lewis v. Seifert, (Pa. Sup.) 11 Atl. Rep. 514. Slater v. Chapman, (Mich.) 35 N. W. Rep. 106; Telander v. Sunlin, 44 Fed. Rep. 564.

Where employers are unable themselves to be present and inspect their machinery and premises, and see that they are kept in proper and safe repair, and employ others to do so for them, such employes are vice principals. Van Dusen v. Letellier, (Mich.) 44 N. W. Rep. 572.

Where a company employs a person to inspect, repair, and provide machinery for others to operate who are employed by the same company, he is a vice principal. Railroad Co. v. McKee, (Kan.) 15 Pac. Rep. 484.

So, also, is a railroad yard master with respect to employes engaged in making up trains, and, though he may be temporarily engaged as an engineer, he is none the less yard master, and entitled to be obeyed as such. Hardy v. Railway Co., 36 Fed. Rep. 657.

A yard master, having power to hire and discharge men, and assign and direct their work, is a vice principal in respect to a switchman. Lyttle v. Railway Co., (Mich.) 47 N. W. Rep. 571.

One to whom a master gives the entire charge of the selection of the materials and the construction of a runway used in carting coal from the hatchway of a vessel to a bin on the dock, and who also employs and directs the laborers unloading the coal, is the representative of the master. Brown v. Gilchrist, (Mich.) 45 N. W. Rep. 82.

The foreman of railroad repair-shops, to whom is intrusted the task of restoring wrecked trains, with the assistance of a crew of men selected from the workmen in the shops and the section hands, and who has charge of all the men engaged in restoring the train, is, when in charge of a wreck, a vice principal. Borgman v. Railway Co., 41 Fed. Rep. 667.

A foreman who is in charge of a gang of workmen engaged in construction work on a railroad, with full power to hire and discharge men, and direct them when and where and how to work, is a vice principal, notwithstanding that he occasionally lends a hand in the actual manual labor. 47 Fed. Rep. 195, affirmed. Woods v. Lindvall, 48 Fed. Rep. 62, 1 C. C. A. 37.

Where a foreman in the employ of a railroad company acts as a vice principal in calling out all its employes to avert the threatened destruction of a bridge by the accumulation of drift in a freshet, he does not cease to be such vice principal and become a fellow servant as soon as he has assigned to the other emloyes a place to work, but retains his original character while directing the details of the work. 28 N. E. Rep. 183, affirmed. Nall v. Railway Co., (Ind. Sup.) 28 N. E. Rep. 611.

The following have also been held to be vice principals:

The master mechanic in a railroad company's shops, who has full authority over the men, machinery, and work, and who is the only representative of the company there at the time with respect to the other employes in the shop, or the firemen on the locomotives. Taylor v. Railroad Co., (Ind.) 22 N. E. Rep. 876; Kruger v. Railway Co., (Ind. Sup.) 11 N. E. Rep. 957.

The conductor of a train with respect to the other employes operating the train under his orders, Boatwright v. Railroad Co., 25 S. C. 128; Wooden v. Railroad Co., (Super. Buff.) 18 N. Y. Supp. 768; Coleman v. Railroad Co., 25 S. C. 446; Railroad Co. v. Dentzel's Adm'r, (Ky.) 14 S. W. Rep. 958; Daniel v. Railway Co., (W. Va.) 15 S. E. Rep. 162; or with respect to the fireman on another train, Ragsdale v. Railroad Co., 42 Fed. Rep. 383.

But a freight conductor does not so far represent the company as to be authorized to rescind rules made by the company for the guidance of its brakemen in coupling cars. Russell v. Railroad Co., 47 Fed. Rep. 204.

A train dispatcher. Lewis v. Seifert, (Pa. Sup.) 11 Atl. Rep. 514; Smith v. Railway Co., (Mo. Sup.) 4 S. W. Rep. 129, citing Booth v. Railroad Co., 73 N. Y. 38; Railroad Co. v. Henderson, 37 Ohio St. 552; Washburn v. Railroad Co., 3 Head, 638.

The superintendent of construction and repair of bridges of a railroad company with respect to men whom he had authority to employ and discharge. Railroad Co. v. Smith, (Neb.) 36 N. W. Rep. 285.

The foreman of a company of men engaged in repairing bridges, water-tanks, and telegraph lines along a line of railway while going to or from their labor on a hand car. Railroad Co. v. Smith, (Neb.) 36 N. W. Rep. 285.

A superintendent of the work of extending a line of railroad, who has foremen and workmen under him, whom he employs and discharges at pleasure, and who has entire control of the cars, tools, machinery, and men employed. Railroad Co. v. Driscoll, (Colo. Sup.) 21 Pac. Rep. 708.

The "pit boss" of a mine who has authority to tell the men to do certain work or quit. Coal Co. v. Wombacher, (Ill. Sup.) 24 N. E. Rep. 627.

A foreman employed by a railroad company, having exclusive charge and control of the laborers working under him, with full authority to direct where they shall work. Railway Co. v. Graham, (Ind. Sup.) 24 N. E. Rep. 668.

A foreman in the repair department of the shops of a railroad company, with power to employ and discharge hands. Railroad Co. v. Williams, (Tex. Sup.) 12 S. W. Rep. 835; Railway Co. v. Naylon, (Colo. Sup.) 30 Pac. Rep. 249; Railroad Co. v. Conroy, 39 Ill. App. 351; Railway Co. v. O'Brien, (Colo. Sup.) 27 Pac. Rep. 701; Lasky v. Railway Co., (Me.) 22 Atl. Rep. 367; Sullivan v. Railway Co., (Mo. Sup.) 17 S. W. Rep. 748; Yeaman v. Machine Co., (Ind. App.) 30 N. E. Rep. 10; Fink v. Ice Co., (Iowa,) 51 N. W. Rep. 155; Harrison v. Railroad Co., (Mich.) 44 N. W. Rep. 1034.