## KOSHLAND ET AL. v. WEBER. ·

(No. 810; Decided May 10th, 1915; 148 Pac. 369.)
(Rehearing Denied, October 18th, 1915; 152 Pac. 167.)

CONTRACTS—FACTORS—PRINCIPAL AND AGENT—RELATION CREATED BY ·CONTRACT—INSTRUCTIONS BY PRINCIPAL—RESTRICTIONS ON AUTHORITY—OBLIGATION OF FACTOR—TRIAL—SPECIAL FINDINGS—INCONSISTENT FINDINGS—ULTIMATE FACTS—GENERAL VERDICT—NEW TRIAL—JUDGMENT—INSUFFICIENCY OF EVIDENCE TO SUSTAIN FINDINGS. ·

1. The relation of principal and factor is created by a contract entered into between a woolgrower and a commission firm whereby the former agrees to consign to the latter a quantity of wool in good merchantable condition, pay a commission on sales and interest at specified rates on advances, the latter agreeing to make a cash advancement on the wool, provide insurance and storage for the product free of charge for a given period, to guarantee sales, charge interest on advances and a ·specified commission on sales.

2. Where a woolgrower, who consigned a quantity of wool to a factor, who agreed to make cash advancements and a future sale of the wool on commission, thereafter restricted the authority of the factor by instructions not to sell, unless the price would net the consignor a specified price, the grower cannot complain of a failure of· the factor to sell at a less price during a period in which the owner ·refused to withdraw his price restriction.

3. An affirmative finding to a question, as to whether the jury found "any evidence" showing bad faith of a factor in handling the principal's goods and in disposing of the same, is· not a finding· of bad faith on the part of the factor as an ultimate fact and is equivalent to no finding.

4. Where a woolgrower, who had contracted to consign his wool to a factor for sale, was a subscriber to a weekly publication containing reports of the wool market, the failure of the factor to keep the woolgrower informed as to the condition of the market did not create a liability.

5. Where special findings are materially inconsistent, the judgment must be reversed and a new trial granted.

6. A finding in a special verdict that a factor receiving goods to sell on commission was not able to sell so as to net the principal a specified sum, demanded by him, is in conflict with a finding that the factor did not use ordinary care and diligence in selling the goods, and a motion by the factor for judgment thereon is properly overruled, but a motion for new trial should be granted.

### ON PETITION FOR REHEARING.

7. Where the appellate court incorrectly quoted a special interrogatory answered by the jury, and the error was observed by the court on the hearing, but was not corrected, petition for rehearing will not be granted on the ground of such error, but the court will simply correct it.

ERROR to the District Court, Converse County; HON. WILLIAM C. MENTZER, Judge.

Action by Joseph Koshland and others, doing business under the firm name and style of J. Koshland & Co., against Alex Weber to recover a balance claimed to be due on a wool consignment contract. There was a judgment for defendant and plaintiffs bring error. Other material facts are stated in the opinion.

*Fred D. Hammond,* for plaintiffs in error.

The verdict of the jury was the result of the influence of passion and prejudice against the plaintiffs and was not supported by the evidence. It was undisputed that the factor was restricted to a price by his principal, which could not be had upon the market. The principal, Mr. Weber, was to blame for the failure to sell the wool upon the market by reason of his restrictions upon the sale of the wool and his positive instructions, as to the price for which it might be sold. The case is similar to Justice et al. v. Brock

(Wyo.), 131 Pac. 38.   Plaintiffs in error having conducted
the business according to usages of trade and in a business
like manner in every respect and in the full exercise of
good faith and diligence are exonerated from responsibility
for loss occasioned the principal by reason of his own act.
(Phillips v. Moir, 69 Ill. 155.)   A factor is only bound to
exercise reasonable care.   (Darlington v. Fredenhagen, 18
Ill. App. 273.)   As a general rule, factors are bound to
obey all orders of their principal respecting the time and
mode of sale, yet when they have made large advances
and incurred expenses on account of the consignment, the
principal cannot by subsequent orders control the right to
sell at such a time, if in the exercise of a sound discretion
and in accordance with the usages of trade, they deem it
best to secure indemnity to themselves and to promote the
interest of the consignor.   (Field v. Farrington, 77 U. S.
141;   Rice v. Brook, 20 Fed. 611;   Talcott v. Chew, 27
Fed. 923.)   If a factor has made advances on goods, he
may sell them below the limited price, if the consignor re-
fuse to pay the charges.   (Parker v. Brancker, 39 Mass.
40;  Smedley v. Williams, 1 Pars. Eq. Cas. Pa. 359; Davis
v. Cobe, 30 N. W. 662 (Minn.)   It was error to admit
evidence of sales made by the plaintiffs in error for Jack
Bros., there being no evidence that the wool of Jack Bros.
was of the same character and quality as that of Mr.
Weber; moreover, some of the Jack Bros. wool was lost
by the carrier and settled for at a rate in excess of what
the balance was sold for on the market.   Instruction No.
13 was not supported by any testimony; instruction No.
15 was prejudicial in that it was in its nature coercive and
given after the jury had been considering the case a great
many hours.   The impression given by this instruction was
that the court desired the minority, if there was a minority
of the jury, to yield to the judgment of the majority. (Sar-
geant v. Lawrence, 40 S. W. Rep. 1075, 16 Tex. Civil Ap-
peals, 540; Stoudt v. Shepherd, 73 Mich. 588; Cranston v.
N. Y. Cent. H. R. R. Co., 103 N. Y. 614; Twiss v. Lehigh
Valley Ry. Co., 70 N. Y. S. 241; Miller v. Miller, 41 Atl.

Rep. 277, 187 Pa. St. 572; People v. Engle (Mich.), 76
N. W. Rep. 502; Randolph v. Lampkin, 14 S. W. Rep.
538 (Ky.); State v. Ivanhoe, 57 Pac. Rep. 317 (Ore.), 38
Cyc. 1859.) Plaintiffs' motion for judgment upon special
finding No. 3 should have been granted. (Comp. Stats.
1910, Sec. 4512; Clementson on Special Verdicts, Chap.
8, p. 126.)

*Harry J. Devine, A. M. Morrissey, Allen G. Fisher* and
*William P. Rooney,* for defendant in error.

The arguments of plaintiffs' counsel does not reach the
record nor the merits of the controversy. The quotation
from Justice, Bateman & Co. v. Brock was modified on re-
hearing in 133 Pac. 1070. The only question here is wheth-
er the evidence sustained the verdict. (Walker v. McCaull,
13 S. D. 512, 83 N. W. 578; Usborne v. Stephenson, 36
Ore. 328, 58 Pac. 432; Porter v. Blood, 22 Mass. (5 Pick.)
54; Mechem Agency, Secs. 1006, 1018.) The evidence is
to be tested by these rules. (Roberts v. Cobb, 76 Minn.
420, 79 N. W. 540.) Preference shown by a factor to other
principals deprives the factor of a right to commission.
(Robertson v. Chapman, 152 U. S. 673; Michaud v. Girod,
4 How. 503; Copeland v. Merc. Ins. Co., 6 Pick. (Mass.)
198; Moore v. Morre, 5 N. Y. 256.) The relation of an
agent requires entire good faith and loyalty in the interests
of his principal. (31 Cyc. 1430-1433; 2 Enc. of Law
(2nd Ed.), 1071.) And to give his principal timely notice
of every fact or circumstance, which may make it necessary
for him to take measures for his security, and if he fails
to do so, it is a dereliction of duty, for which he is charge-
able. (31 Cyc. 1450; Jansen v. Williams, 36 Neb. 874;
Mechem, Agency, Sec. 455; Mason v. Strickland, 73 Neb.
483; Norris v. Taylor, 49 Ill. 17; Edmonstone v. Harts-
horn, 19 N. Y.; Brown v. Arrott, 6 W. & S. (Pa.) 402;
Duff v. Duff, 71 Cal. 513; 31 Cyc. 1437.) The instructions
given by the court are supported by the authorities.
(Brawn v. McGran, 14 Pt. 479; M. M. Walker v. Dubuque
F. & P. Co. (Iowa), 85 N. W. 616; Phillips v. Scott, 43

Mo. 86; Howard v. Smith, 56 Mo. 316; Hilton v. Vender-
bilt, 82 N. Y. 591; Baugh v. Kirkpatrick, 54 Penn. 84;
Lockett v. Baxter, 3 Wash. Terr. 350.)   The conversations
between Bennett and Weber were a contract for a valuable
consideration, whereby plaintiffs guaranteed 23 cents at
Casper on the delivery f. o. b. cars; or else it was simply
conversation expressing a wish or expectation and insuf-
ficient to bind, as an instruction, and should have been dis-
regarded.   (LeFarge v. Kneeland, 7 Cowan (N. Y.) 456;
Man v. Laws, 117 Mass. 293; Smedley v. Williams, 1
Pars. Eq. Cas. (Pa.) 359; Vianna v. Barclay, 3 Cowan
(N. Y.) 281; B. F. Sturtevant Co. v. Cumberland (Md.),
68 Atl. 351; Courcier v. Ritter, 4 Wash. (U. S.) 549;
Loraine v. Cartwright, 3 Wash. (U. S.) 151; Marsh v.
Whitmore, 21 Wall. (U. S.) 178; Manella v. Barney, 3
Cranch (U. S.) 415.)   The testimony supports the verdict
and judgment.   There is no inconsistency between the ver-
dict and the answer to the third special interrogatory.
There is no assignment of error for refusal to direct a ver-
dict for plaintiff.   This motion is not in the bill of excep-
tions and cannot be reviewed.   (Perkins v. McDowell, 3
Wyo. 329; 4 Standard Proc. 303; Sample v. Carroll, 32
N. E. 221; Cleveland Oil & Paint Mfg. Co. v. Norwich
Union Fire Ins. Co. (Or.), 55 Pac. 438.)   The petition
does not state facts sufficient to entitle plaintiffs to any re-
lief.   (Rogers v. Duff, 97 Cal. 66; Toole v. Baer, 91 Ga.
113, 2 Chitty's Pl. 78; Desmond v. Stebbins, 140 Mass.
339; 1 Abb. Forms, 183.)   Instruction No. 15 was not
coercive.   (Stout v. Shepherd, 73 Mich. 588; People v.
Ingle, 76 N. W. 502; Commonwealth v. Tuey, 8 Cushing,
1 (Mass.); People v. Coulon, 114 N. W. 1015; State v.
Smith, 49 Conn. 376; Allen v. U. S., 164 U. S. 492.)   The
cases cited from 28 Cyc., at page 1859, are not in conflict
with the above authorities.   On the same page are cited
Gibson v. Minneapolis, 55 Minn. 177; A'Hearn v. Mann,
60 N. H. 472.   The case of State v. Egland (S. D.), 121
N. W. 799, gives a full discussion of this class of instruc-
tions.   See also the following cases, which support the

principle: State v. Pierce, 126 Mo. 34; Secor v. State, 118 Wis. 621; People v. Miles, 143 Cal. 636; Patterson v. State, 122 Ga. 587; Territory v. McGinnis, 10 N. M. 269; Muckleroy v. State (Tex.), 42 S. W. 383; Wilkerson v. State, 49 Tex. Cr. Rep. 170, 91 S. W. 228; Nicklis v. Seaboard &c. Co., 74 S. C. 102; Jeffrey v. Robbins, 73 Ill. App. 353; Del Monico Hotel Co. v. Smith, 112 Ia. 659; Pacific R. R. Co. v. Nash, 7 Kans. 280; City of Covington v. Bostwick, 26 Ky. Law Rep. 780; Foote v. Foote, 95 Mass. 411; Cowan v. Umbagog Pulp Co., 91 Me. 26. In support of our cross-petition in error we urge the following points: (1) Defendant was entitled to judgment upon the pleadings at the time when the trial court ruled upon the demurrer filed by plaintiff to defendant's answer, wherein affirmative relief is asked. (Pugh v. Porter Bros., 50 Pac. 772 (Cal.); 4 Enc. Forms, 97.) (2) There was testimony showing a balance due defendant at the time of trial of $8,295.15. It was uncontradicted and the jury should have so found. (3) The court should have re-instated the judgment given by default upon the contempt of plaintiff, by the commissioner in September, 1911. (4) Inspection is allowed before trial for the purpose of preparing for trial. (Sweedish American Tel. Co. v. Fidelity & Cas. Co., 208 Ill. 562, 70 N. E. 768; Harris v. Richardson (Minn.), 100 N. W. 92; Gould v. McCarty, 11 N. Y. 581; Rice v. Ehle, 55 N. Y. 519; State v. District Court (Mont.), 71 Pac. 602; First Nat'l Bank v. Smith, 36 Nebr. 207; 6 Enc. P. & P. 814; Wright v. Crane, 13 S. & R. (Pa.) 447; McDermott v. U. S. Ins. Co., 1 S. & R. (Pa.) 357; Garrick v. Chamberlain, 91 Ill. 620; Cleveland E. R. Co. v. Closser, 126 Ind. 348; Garnett v. Kellogg (Tex. Civ. App.), 25 S. W. 680; Code Virginia, 1887, Sec. 3371; Code W. Va. 1887, Sec. 43, Ch. 130; Rev. Stat. Missouri, 1889, Sec. 2180; Sandel & Hill's Ark. Big., 1894, Sec. 2899; R. S. U. S., Sec. 724; Iasagi v. Brown, 1 Curtis, 401; Waller v. Steward, 4 Cranch C. C. 532; Bloede v. Bancroft, 98 Fed. Rep. 175.) (5) On January 22nd, 1913, two motions were filed by defendant directed to the refusal to comply with the order of the court

and commissioner, directing answers to questions.    Both should have been sustained.    (Comp. Stats. 1910, Secs. 4419 and 4421; Downie v. Nettleton, 61 Conn. 593; Gunn v. N. Y., N. H. & H. R. R. Co., 171 Mass. 417, 50 N. E. Rep. 1031; Robbins v. Brockton &c. Co., 180 Mass. 51, 61 N. E. Rep. 265.)  Where the witness has source of information and refuses to answer the interrogatory is taken as confessed.  (Wells v. Groesbeck, 22 Tex. 429; Allen v. Lumber Co., 90 Ala. 490.)    But the reply ought first to be stricken.  (Fels v. Raymond, 139 Mass. 100; Rice v. Ehele, 55 N. Y. 518; Hogaboom v. Price, 6 N. W. 43 (Iowa). Defendant is entitled to judgment and to the relief asked. (Harding v. Morrill, 136 Mass. 291; Dustin v. Farrelly, 81 Mo. App. 380; Springfield v. Western &c. Co., 39 O. S. 681; S. C., 32 N. E. 961; First Nat. Bank v. Smith, 36 Neb. 199.)    (6) Plaintiffs have waived any claim that they were prejudiced by the trial court by acquiescing in the judgment given against the cost bondsmen without objection to the jurisdiction.  (7) The bond given for change of venue was deficient in that it was signed by only one surety. For such deficiency default judgment should be given.

*Harry J. Devine, A. M. Morrissey, Allen G. Fisher* and *William P. Rooney,* for defendant in error on petition for rehearing.

That portion of the bill of exceptions embraced in volume 2 of the record was not authenticated by the trial judge, and the exceptions therein contained were not before the appellate court for review.  (Murrin v. Ullman, 1 Wyo. 36; Jubb v. Thorp, 2 Wyo. 406; France v. First Nat'l Bank, 3 Wyo. 188; Connell v. O'Neil, 154 Pa. St. 587; Lyon v. Davis, 111 Ind. 384; Hightower v. Flanders, 69 Ga. 772; Chicago &c. R. Co. v. Harper, 128 Ill. 384; State v. Henrick, 62 Iowa 414; Harrell v. Seal, 121 Ind. 193.) The verdict of the jury as to the credibility of witnesses and the weight of the evidence should not be disturbed on appeal.    The answers to special interrogatories were not inconsistent with the general verdict.    However, the · spe-

cial questions propounded were simply effective cross-examinations of the jury. (Greenlee v. Mosnat, 126 Iowa, 330; Horr v. C. W. Howard Paper Co., 126 Wis. 160; Cinkovitch v. Coal Co., 143 Iowa, 595.)

SCOTT, JUSTICE.

The plaintiffs in error and the defendant in error were respectively plaintiffs and defendant below and for convenience will he hereinafter referred to as such. The plaintiffs as co-partners were factors engaged in buying and selling wool on the Boston market during all the times hereinafter referred to. The defendant was a flockmaster residing in Natrona County, Wyoming, and at the solicitation of plaintiffs' representative or agent on February 10, 1909, made the following written agreement to and with plaintiffs, to-wit:

"For and in consideration of one dollar, to me in hand paid by J. Koshland & Co., of Boston, Mass., the receipt whereof is hereby acknowledged, I hereby agree to consign to said J. Koshland & Co. at an advance of $7,000 00/100 all of my wool from the 1909 shearing from 14,000 head of sheep, consisting of about —— wethers, 8,500 ewes, 5,500 yearlings, 200 bucks. The wool to be delivered to the said J. Koshland & Co., or their representative, f. o. b. cars at Casper station, on or about June 15th, 1909, in good merchantable order and condition, free from any excessive amount of burrs, or dip, well tied and honestly packed, and agree to defend the title of said wool against all and every person whatsoever. Sheep are mortgaged to 1st Nat. Bank, Cheyenne. Sheep are branded Y̱ HK K̲Y agree to pay to said J. Koshland & Co., interest on all advances at 6 per cent per annum, and a commission of 1¼c per pound, this commission to include guarantee of sales, storage and fire insurance free for 6 months in Boston. Should I sell my wool before or after shearing I agree to pay to said J. Koshland & Co., ½c per pound commission on wool from said sheep, figuring this wool at —— pounds per fleece, also

what money they have advanced with interest at 6 per cent per annum.                          Signature Alex Weber.
            P. O. Address, Casper, Wyo."

The counterpart of said contract is as follows:
                  "Casper, Wyoming, Feb. 10, 1909.

Received on consignment from Alex Weber of Casper, Natrona County, Wyoming, his wool from his 1909 clip to be sheared from about 8,500 ewes, 5,500 yearlings, 200 bucks, on which we agree to make him an advance of seven thousand dollars at 6 per cent interest, and charge him a commission of 1¼c a pound which covers guarantee of sales, storage and fire insurance for six months in Boston.   In case he prefers to sell his wool at home he may do so by paying us ½c per pound and all money advanced with 6% interest on the latter.           J. Koshland & Co.
                            B. F. Bennett."

On July 2, 1909, there was 125,414 pounds of wool or all of defendant's wool clip for 1909, delivered to plaintiffs under the contract and plaintiffs advanced from time to time the sum of $24,000.   The wool reached Boston on July 14, 1909, and was stored in plaintiffs' lofts and exhibited for sale with other lots of wool, and was finally closed out on September 13, 1910, when the plaintiffs rendered their account to Weber claiming an amount due them for advances and interest of $5,305.22, over and above the net price received for the wool.   This action was commenced by plaintiffs to recover that amount and interest. An answer and cross-petition and a reply were filed by which pleadings it was admitted that plaintiffs were wool merchants engaged in buying and selling wool on the wool market of Boston, both as factors and principals; that on February 10, 1909, defendant being a wool grower, negotiated to sell his wool clip for that year to plaintiffs and which negotiations culminated in his signing the contract of that date.

It is admitted that plaintiffs advanced and paid to defendant at the dates respectively the sums stated as fol-

lows: "On February 15, 1909, the sum of $2,500.00; on April 12, 1909, the sum of $4,500.00; on May 6, 1909, the sum of $3,500.00; on July 2, 1909, the sum of $3,500.00; on July 19, 1909, $10,000.00. Making a total  *   *   *   * of the sum of $24,000.00."

It is claimed by defendant and pleaded in his cross-petition by way of counter-claim, and it is testified to "That on May 26, 1909, and before his wool was shorn," the plaintiff received a bona fide offer by wire from one Willey of twenty-three cents a pound for his wool and that plaintiffs' agent told him not to accept the offer, saying: "Don't sell it to Willey, but ship it down to us and we will get you more money for it," and that acting on these representations defendant turned down the Willey offer and delivered the wool to plaintiffs as already stated, and that for that reason he claimed that plaintiffs warranted or guaranteed to sell at a fixed price. He also alleged that plaintiffs did not act in good faith and that they preferred themselves and others to defendant in the matter of selling wool; that they did not use ordinary care, skill and diligence in selling the wool, whereby defendant was damaged, &c. The plaintiffs replied, denying that they guaranteed to get a fixed price, alleged that they acted in good faith and with due diligence, care and skill in the matter of selling defendant's wool, and further alleged "That at the time of the delivery of said wool by the defendant to the plaintiff and at the time of the making of said advances, there was no other or further agreement than that of February 10th, above stated, and that the plaintiffs had, under said agreement, the authority and power to sell the said wool in the open market, at the best price obtainable therefor, which, however, become subject to certain verbal and written instructions, of the defendant to the plaintiffs, after the wool had been delivered to the plaintiffs, in which the plaintiffs were required not to sell the wool of the said defendant's upon the market unless the same would net the sum of 23c to the defendant and after September 23, 1909, the sum of 24c. That the plaintiffs obeyed the said instructions of the

defendant and made every reasonable effort to obtain the price for said wool, indicated by the defendant in said verbal and written requests, but were unable to find a buyer therefor, at the price fixed by him, and the plaintiffs thereupon repeatedly requested of the defendant that he remove his limitations upon their right to sell said wool, to net the figures above stated, to-wit: the sum of 24c per pound, and after the 31st day of October, 1909, the sum of 23c per pound, which defendant refused to do." The reply also contains the following allegation, to-wit: "That thereafter, to-wit: during the month of September, 1910, the plaintiffs attached certain moneys in the hands of Jeremiah Williams & Co., on account of over due account of the plaintiffs against the defendant and realized therefrom from said action the sum of $1,484.56, which should be and is a credit in favor of the defendant and against the plaintiffs in this action. That the balance due from the defendant to the plaintiffs, including moneys advanced, interest thereon, all charges and expenses, less proper credits as hereinbefore recited, including said $1,484.56, amounted to the sum of $3,820.66, on September 13, 1910, no part of which has been paid. The case was tried to a jury which found generally in favor of the defendant for the sum of four thousand seven hundred and seventy-seven and 99/100 dollars, and also answered special interrogatories submitted to them at plaintiffs' request as follows:

"1.   Do you find any evidence in the case showing bad faith on the part of plaintiffs in handling defendant's wool and in disposing of the same? Ans. Yes."

"2.   What is the amount due under the evidence from the plaintiffs as a balance on account of the advances made to the defendant of $24,000, and interest thereon at 6% per annum after deducting the net returns from the sale of defendant's wool? Ans. Nothing."

"3.   Do you find from the evidence that the plaintiffs were ever able to sell the defendant's wool on the Boston market so as to net him 24c up to November 3, 1909, and so as to net him 23c after that date? Ans. No." .

"4. Do you find from the evidence that the plaintiffs used ordinary care, skill and diligence in the handling of defendant's wool under said consignment contract? Ans. No."

Judgment was rendered in favor of defendant and against the plaintiff on the verdict. A motion by plaintiffs for judgment upon these special findings and also a motion for a new trial were overruled and the plaintiffs bring error.

1. It is here contended that the court erred in overruling the motion for a new trial upon the several separate grounds, among which are the following, viz.: First, that there is not sufficient evidence to support the verdict or the special findings; second, that the verdict and special findings are contrary to the evidence and the law; third, that the court erred in overruling plaintiffs' motion for judgment on the special findings, notwithstanding the general verdict. The first and second assignments may be considered together.

The relation between the parties was that of principal and agent or factor. There is no question here presented as to the purchaser or purchasers failing to pay the price at which they bought the wool. In overruling plaintiffs' motion for a directed verdict after each party had rested their case and before the jury was instructed the court said: "I will overrule this motion as it stands. * * * * I don't think there is sufficient evidence here to support a guarantee that this consignee will pay any particular sum—23c a pound. On that branch of the case I am very well satisfied as to the rights of the parties, but the other I will want to submit to the jury." We think the court was correct in its view that the evidence failed to show that plaintiffs warranted or guaranteed to sell defendant's wool at a specified or fixed price. The jury were instructed upon the theory so indicated by the court and the issue was as to whether the plaintiffs used due diligence as the law required and acted in good faith in endeavoring to obtain the price sought by Weber. To the extent of their advances they had a lien and to that extent an interest in the wool and its proceeds.

It is admitted that on July 2, 1909, the defendant delivered the wool free on board the cars at Casper, Wyoming, and that plaintiffs transported it to Boston, Mass., and upon the theory upon which the case was tried they undertook in the course of trade to use due care, skill and diligence in endeavoring to sell it on the market of that city at defendant's price, if any. It is undisputed that a net price of twenty-three cents would mean a price of at least twenty-seven cents on the Boston market, the difference as the evidence tends to show of four cents a pound covering the freight, expenses, commissions, etc. Late in July or early in August and after the shipment of the wool, Bennett, the plaintiffs' agent who solicited the consignment in Wyoming, returned to Boston and the further communications between plaintiffs and defendant was by correspondence. On August 20, 1909, plaintiffs advised the defendant that they could not at that time sell the clip so as to net him 23 cents per pound. The evidence tends to show and is undisputed that defendant visited the store and offices of plaintiffs in Boston several times during the latter part of August and the first part of September. Weber testified that he then saw Mr. Bennett, who represented plaintiffs and had theretofore contracted for his wool, and talked with him as to the condition of the market; that Bennett was always optimistic and that he, Weber, was led to believe that the price of wool was going up and that was why he wrote the letter of September 23, 1909, hereinafter set out in full, while on his way home. The evidence tends further to show that defendant made no complaint with reference to the manner in which plaintiffs were handling his wool while visiting their place of business or in that letter. While in Boston he was advised by Bennett that about November 1st, following, would be the most advantageous time to sell his wool. This conversation was prior to the letter and the advance in his restricted price was over the protest of plaintiffs. The letter is as follows:

"PALMER HOUSE, CHICAGO, Sept. 23d, 1909.
· "Mr. B. F. Bennett, Boston Mass.

"DEAR FRANK:—I learn that the London sales advanced 10 per cent and as I did not see you when I learned this I wish to say that I do not want my wool sold until it will net me 24 cents, inclusive of the interest charges—commission since July 1st or date of shipment. I think it will bring that later on and as I took the chance to raise the stuff why I want all that there is in it, and besides that I wish to win my bet with Sidney Eisman, and as I understand the storage insurance, runs for six months on the commission why that would make Jan or Febr before I would need to sell it—so I might as well be game and hold for that price—so when it can be sold for enough so it will net me 24 cents including all charges—from date of shipment—why sell—will leave for Casper tonight—stop in Omaha a day or two and then go on home—write me at Casper at your leisure—but I think that by holding it will bring that money later on—what do you think is it worth the chance—but until you hear from me again just hold the stuff for that money clear.

"With kindest regards to Mrs. Bennett—Herbert and yourself from both Mrs. Weber and myself and thanking you for the hospitality extended to both of us,

"I am very sincerely,
"ALEX WEBER."

The plaintiffs, in answer to this letter, told him of the condition of the wool market and asked the defendant to remove the restrictions as to price. The defendant insisted on his restrictions, although the plaintiffs advised him that if permitted they would sell for all that the wool was worth on the market. On October 31, 1909, he wrote plaintiffs: "As to your view of the wool market it may be all right—but I do not think so—I am not worried as to the outcome whatever. * * * * I think it will bring 24 cents but if you can sell to net 23 cents why all right, but I am not scared at the outcome if wool is held." Again on November 3, 4, 10, 30, December 21, 1909, plaintiffs wrote him of

the falling market, and on January 21, 1910, plaintiffs advised defendant that the price of his wool had fallen to 24 to 25 cents on the Boston market, which would net him 20 or 21 cents per pound for his wool and advised him to sell. On February 28, 1910, the plaintiffs again wrote defendant of a further slump in the market. On June 2, 1910, the plaintiffs advised defendant that having been unable to obtain the price he insisted on and by reason of his restrictions and the shrinkage of prices there would be a deficit in the advances made to him and called on him for a margin on his wool of 4 or 5 cents per pound. No response was made by defendant to this letter. On July 28, 1910, plaintiffs wrote defendant that they had one offer of 19½ cents for his wool on 60 days' time. On September 9, 1910, they advised Weber that they had sold his wool at 20 cents, were making delivery and as soon as completed would send account of sales. The plaintiffs introduced evidence tending to show the condition of the market, the prevailing prices, their diligence in endeavoring to sell under the restrictions and their inability to do so and the letters referred to showing the unwillingness of the defendant to remove the restrictions as to price at which the wool should be sold. There is no conflict in the evidence that the last letter received from Weber was the one referred to dated October 31, 1909, and also that he failed to cover the advances upon a falling market as requested by their letter of June 2, 1910. There is some conflict in the evidence as to the price obtainable, but there is no conflict in the evidence that defendant never receded from his price so as to authorize a sale which would net him less than 23 cents per pound for his wool and when requested to remove the restrictions as to price of 24 cents he wrote them on October 31, 1909, as hereinbefore quoted, that he didn't think their views as to the wool market were right, but he would take 23 cents net and that he was not scared as to the outcome if the wool was held. There seems to have been a constant endeavor on plaintiffs' part to induce defendant to remove the restrictions as to price so as to bring his wool in touch with

the market, which he persistently refused to do. This case is distinguishable on the facts from Justice et al. v. Brock, 21 Wyo. 281, 131 Pac. 38. In that case the factors held the consignment of wool for a long period of time on a falling market, and we held upon an application for rehearing that such act might be sufficient to sustain a finding of negligence (133 Pac. 1070) in not selling the wool. In that case there was no limitation as to price, while here there was, and the evidence tends to show that plaintiffs handled the wool according to the known usage of trade and business and the jury by their answers to the third interrogatory found that up to November 3, 1909, plaintiffs were unable to sell the defendant's wool on the Boston market so as to net him 24 cents or to sell the wool on the same market after that date so as to net him 23 cents per pound.

By their answer to the fourth interrogatory the jury found that plaintiffs did not use ordinary care, skill and diligence in the handling of defendant's wool under the consignment contract. During the period that a restriction was placed on the selling price by the defendant the plaintiffs could not be said to be guilty of lack of care, skill or diligence in trying to sell the wool if they were unable during that time to sell the wool so as to net the required price as found by the answer to the third question. The matter of care, skill and diligence in selling prior to the letter of September 23, 1909, was practically eliminated from the case upon the evidence for the reason that the defendant at no time complained of a failure to sell before that letter was written, nor did he in that letter or so far as this record shows ever complain by letter or otherwise to plaintiffs of such alleged failure until this suit was commenced.

What was the effect of the restrictions of defendant as to selling price upon his contention of bad faith on the part of plaintiffs? The evidence is uncontradicted that plaintiffs were from and after September 23 to November 3, 1909, restricted to selling price of not less than 24 cents net, and that prior to that date defendant was expecting to net twenty-three cents per pound for his wool. It must be

conceded that defendant's letter of September 23rd was a restriction as to the price of sale. We think the evidence taken as a whole fails to sustain defendant's allegation that plaintiffs gave their own wool a preference over his wool of the same grade and quality after his letter of September 23, 1909, in the matter of sales, or that they failed to use ordinary care, skill and diligence in selling defendant's wool. There could be no preference as long as defendant failed to remove his restrictions as to price so as to bring his wool in touch with the market. He persistently failed and refused to remove his restrictions, and insisted on holding his wool for a limited price until the market price advanced so as to meet his demands, and it fairly appears from the evidence that the plaintiffs' inability to sell the wool after that letter was the result of defendant's advance in the price over and above what he had theretofore expected and which expected price was the subject of the conversation between him and plaintiffs in Boston prior to his advance in price. The evidence tends to show that plaintiffs could have sold his wool so as to have realized twenty-three cents net or more on or about November 1, 1909, but for defendant's September letter restricting them to a selling price of twenty-four cents net. It is elementary that one whose act is the proximate cause or contributes to the injury may have to respond in damages, but not to him who caused or contributes to the injury from which the damages resulted. One cannot negligently or by an intentional act injure himself and recover any actual damage which resulted from such act.

As to whether plaintiffs could have sold the wool for twenty-three cents net per pound prior to the date of that letter, the evidence tends to show that defendant was expecting that much or more. He testified that he always felt that plaintiffs had a right to sell at any price over the Willey offer, which it will be remembered was twenty-three cents per pound for immediate delivery at Casper. Bennett testified that about August 1st and before leaving Casper and departing for the east, Weber instructed him verbally not

to sell the wool unless it would bring twenty-three cents net. Weber in his testimony denies this conversation, but whether they had the conversation or not, the evidence tended to show without contradiction that defendant was expecting his wool to net him at least twenty-three cents and plaintiffs knew of that fact when, as the evidence shows, Weber visited Boston during the latter part of August and the early part of September and investigated and talked over the wool market with plaintiffs and did not complain that they had failed to sell his wool, and with no reason to expect that they would thereafter be restricted to a selling price of twenty-four cents net and with knowledge that defendant was expecting his wool to net him twenty-three cents or more, plaintiffs told him that about November 1 would be the most advantageous time to sell his wool, as the subsequent events proved, but against plaintiffs' protest he soon after raised his price to twenty-four cents per pound net, which price the jury found plaintiffs were unable to obtain. The evidence does not show lack of care and diligence as a cause for not selling the wool before the price was restricted to twenty-four cents net, for there was a rise in the market after that, but not so as to net twenty-four cents, and it is not shown that plaintiffs had any reason to expect that they would later be instructed to get that price. Hence it could not reasonably be said that they were lacking in care, skill or diligence in holding the wool during the summer and prior to defendant's September letter. But aside from this condition of the evidence, there is no evidence that during that period there was any such lack of care on plaintiffs' part, and apparently no claim is made in the evidence in that respect as to such period of time.

It is contended that plaintiffs failed to keep defendant informed as to the condition of the wool market. The defendant does not complain that he was ignorant of the condition of the market. He was a subscriber and received the *Boston Transcript*, a newspaper published in Boston, which, as the evidence shows, gave the quotations, and condition of the wool market. As he subscribed for this paper

long before the transaction complained of upon the recommendation of plaintiffs' agent, the latter as representing plaintiffs in the matter of handling defendant's wool knew defendant would get the weekly report in that paper showing the condition and prices of the market. Articles from that paper showing the condition of the market and the reports of sales during different periods of the years 1909 and 1910 were introduced in evidence, notwithstanding which the jury found that at no time were plaintiffs able to obtain 24 cents net for his wool. We are of the opinion that the fourth special finding of fact and the general verdict are each unsupported by the evidence.

2. It is contended that the court erred in overruling plaintiffs' motion for judgment on the answers made and returned by the jury to the interrogatories which were submitted to them by the court. It will be observed that the first question propounded to the jury and their answer thereto does not constitute a finding of an ultimate fact. By its terms the jury state that they find evidence of bad faith, not that plaintiffs were guilty of bad faith. It may be conceded for the purpose of testing the sufficiency of this finding that there was such evidence which might or might not be sufficient to support a finding by the jury of bad faith as an ultimate fact, but the finding does not state that they so found from the evidence. (20 Ency. Pl. & Pr. 330; 38 Cyc. 1921.) However, in view of the general verdict, which is presumed to cover all the issues and also the fourth finding that plaintiffs did not use ordinary care, skill and diligence in their efforts to sell the wool, the insufficiency in this finding might not warrant a reversal of the judgment, yet we are convinced that unaided and alone it wholly fails as a finding of bad faith and is equivalent to no finding.

It is apparent that the answer to the third interrogatory, by which the jury found that plaintiffs were not able prior to November 3, 1909, to sell defendant's wool on the Boston market so as to net defendant 24 cents per pound, is inconsistent with the fourth special finding, by which the jury

found upon the evidence that plaintiffs did not use ordinary care, skill and diligence in handling defendant's wool. The fourth question must be understood as referring to care, skill and diligence in the sale of the wool, although it asks as to care *et cetera* in "handling" the wool, for there is no issue or complaint as to care, skill or diligence in any other respect than as to sale of the wool, and the jury obviously so understood the question. In view of such conflict between the findings the court properly overruled plaintiffs' motion for judgment on the special findings. But we think the court erred in not granting a new trial. The conflict in the special findings would be sufficient cause alone to reverse the judgment under the authority of McBride v. Union Pac. Ry. Co., 3 Wyo. 247, 23 Pac. 71, where it is held that "where the special findings are materially inconsistent the judgment must be reversed, and a new trial granted."

It is unnecessary to discuss other assignments. For the reasons stated we are of the opinion that the court erred in denying plaintiffs a new trial. The judgment will be reversed and a new trial granted.          *Reversed*.

POTTER, C. J., and BEARD, J., concur.

### ON PETITION FOR REHEARING.

SCOTT, JUSTICE.

The opinion in this case was filed in this court on May 10, 1915 (148 Pac. 369). Within due time the defendant in error filed his petition for a rehearing. In the opinion we correctly quoted the first, third and fourth interrogatories, but erroneously quoted the second interrogatory. As the record shows, the interrogatory submitted to the jury is as follows, viz.: "2. What is the amount due under the evidence from the *defendant* to the *plaintiffs* as a balance on account of the advances made to the defendant of $24,000, and the interest thereon at 6% per annum after deducting the net returns from the sale of the defendant's wool? Ans. Nothing." As erroneously quoted in the opinion (148 Pac. 370) the interrogatory reads: "2. What is the amount due under the evidence from the plaintiffs as a

balance on account of the advances made to the defendant of $24,000, and interest thereon at 6% per annum after deducting the net returns from the sale of defendant's wool? Ans. Nothing." It will be noticed that the interrogatory submitted to the jury and as erroneously quoted differ only in omitting the words "the defendant to" immediately preceding the words "the plaintiffs as a balance," &c., and it is urged that we discussed the case upon the misquotation and that that constitutes a ground for granting a rehearing. We cannot assent to the contention that we decided the case upon the theory of a misquoted special finding of the jury. The writer's attention was called to the misquotation by his associates when in consultation and it was understood that the correction should be made, but the writer overlooked it. In so far as counsel for the plaintiff in error are concerned, we are unable to conceive from the discussion of the case in the opinion filed how they could be misled or suppose the court rested its opinion upon a misquotation of that special finding. Indeed, they understood the issues and argued the case from their standpoint and well and ably presented the case for their client. We did not consider the second interrogatory as erroneously quoted or otherwise, except as to its being in harmony with the general verdict, which, in view of the conflicting findings, we held should be set aside and a new trial granted. We think upon this ground alone, that is to say, upon the showing of the petitioner of the misquotation and the record in connection with the issues that it is an error subject to correction and that this court can make the correction, which is accordingly done. We regret that the error occurred and thank the able counsel for calling our attention to it and thus giving us the opportunity to correct the opinion.

It is urged that we overlooked the suggestion of counsel for defendant in error at the oral argument that there was no bill of exceptions to consider herein because the half of it contained in Volume II was not identified by the trial judge. The suggestion does not appear in the brief and the members of this court have no recollection of the matter

being referred to by Mr. Fisher, the only attorney who appeared to orally argue the case on behalf of defendant in error. But even if a motion had been made to dismiss for the alleged defect it could not, upon this record, have been sustained. Volume II referred to apparently consists of a bundle of exhibits and original depositions which were admitted and read in evidence upon the trial, and the contents thereof as so read in the evidence is set forth in Volume I, duly indexed, wherein the evidence may be found, and in addition the index points out the page in Volume II, where the original deposition or exhibit may be found. At the end of Volume I appears the judge's certificate and we are not advised of nor is any fatal defect here suggested or pointed out.

The balance of the petition and the brief refer to matters which were discussed, considered or deemed unnecessary to discuss in the opinion filed. The judgment of reversal was predicated on the conflict between the special findings and the conflict between some of them and the general verdict, and to which views as therein expressed we adhere.

*Rehearing denied.*

POTTER, C. J., and BEARD, J., concur.